Jared F. Kiess
BULLIVANT HOUSER BAILEY PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
jared.kiess@bullivant.com
Telephone: 206.292.8930
Facsimile: 206.386.5130

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MVP HOLDINGS, LLC; LINDA MILLER, and BJORN JOHNSON CONSTRUCTION, LLC,<br><br>　　　　　　　Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiffs West American Insurance Company and The Ohio Casualty Insurance Company (together, the "Carriers") bring this Complaint for Declaratory Judgment against Defendants MVP Holdings, LLC and Linda Miller.

## I. THE PARTIES

1.　Plaintiff West American Insurance Company ("West American") is an Indiana Insurance Corporation with its principal place of business located at 175 Berkeley St., Boston, Massachusetts, 02116.

2. Plaintiff The Ohio Casualty Insurance Company ("Ohio Casualty") is an New Hampshire Insurance Company its principal place of business located at 175 Berkeley St., Boston, Massachusetts, 02116.

3. Defendant MVP Holdings, LLC ("MVP") is a Montana limited liability company with its principal place of business in Missoula County, Montana. On information and belief, all members of MVP are domiciled in the State of Montana.

4. Defendant Linda Miller is an individual residing in Missoula County, Montana and domiciled in the State of Montana. On information and belief, Defendant Miller is the sole member of MVP.

5. Defendant Bjorn Johnson Construction, LLC ("Bjorn") is a Montana limited liability company with its principal place of business in Missoula, County, Montana. On information and belief, all members of Bjorn are domiciled in the State of Montana.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists because both plaintiffs are citizens of a different state than all defendants.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the cause of action occurred in this judicial district and the property at issue is situated in this judicial district.

## III. FACTS

8. The Carriers incorporate by reference all allegations set forth in paragraphs 1 through 8 as if fully set forth herein.

//

A. **The Policies**

9. The Carriers issued certain policies of insurance to first named insured PDT, Inc. dba Paradise Dental Technologies ("PDT").

10. Plaintiff West American issued commercial policy no. BKW57583156 to PDT for the policy period from November 13, 2018 to November 13, 2019 (the "Primary Policy").

11. Plaintiff Ohio Casualty issued commercial umbrella policy no. US057583156 to PDT for the policy period from November 13, 2018 to November 13, 2019 (the "Umbrella Policy").

12. Defendant MVP is a named insured under the Primary Policy and Umbrella Policy (collectively, the "Policies"). As a member of MVP, Defendant Miller is an insured under the Policies only with respect to the conduct of MVP's business.

B. **The Underlying Action**

13. On September 5, 2019, MVP and Miller filed a complaint (the "Complaint") against Bjorn in Montana's Fourth Judicial District Court in and for Missoula County as cause no. DV-32-2019-0000977-BC (the "Underlying Action") alleging breach of contract and various torts in connection with MVP's and Miller's hiring of Bjorn as a general contractor for a construction project. MVP and Miller allege that they entered into a "Fixed Bid Construction Contract" with Bjorn to build a 100 by 150 foot steel building on land owned by MVP for a fixed price of $1.8 million. MVP and Miller claim that Bjorn breached the contract by insisting that MVP and Miller accept various change orders that would have increased the cost of the project to approximately $4 million.

14. On September 18, 2019, Bjorn filed an Answer and Counterclaim in the Underlying Action (the "Counterclaim"). In the Counterclaim, Bjorn alleges that

MVP and Miller had consulted with architects and design professionals prior to soliciting bids for the project, who advised MVP and Miller that the project would cost at least $4 million.  Despite having this information, Bjorn contends that MVP and Miller "reduced the nominal scope of the project and submitted it to local contractors … with the further intention of … later expanding the scope to their original plan without increasing the contract sum to the full $4 million."  Bjorn further alleges that MVP and Miller "intended to leverage the contractor's commitment of resources and to coerce the contractor by various means, including threats of canceling the project, firing the contractor, and by suing him…"  Bjorn alleges that it bid on the project and entered into the fixed bid contract without knowledge of MVP's and Miller's alleged intentions.

15. Bjorn alleges that MVP's and Miller's "repudiation of the contract and the filing of this civil action are both efforts to receive the benefit of [Bjorn's] substantial work … without paying for it."  Bjorn alleges that Miller's and MVP's "repudiation of the contract are done to deprive [Bjorn] of the benefits of its expectancy under the [contract]."

16. The Counterclaim contains four causes of action: (1) breach of contract; (2) constructive fraud; (3) fraud; and (4) "abusive of process" [sic].  The Counterclaim seeks damages for their expectation interest under contract as well as for "harm to business reputation, attorney fees, time and effort, and lost business opportunities."

17. MVP and Miller tendered the defense of the Counterclaim to the Carriers.  West American is currently defending MVP and Miller under the Primary Policy, subject to a full reservation of rights, including the right to file a declaratory judgment action and seek recoupment of costs incurred in providing the defense.

## IV. **FIRST CAUSE OF ACTION**

**Declaratory Judgment – Primary Policy**

18. The Carriers incorporate by reference all allegations set forth in paragraphs 1 through 17 as if fully set forth herein.

19. The Primary Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

20. Pursuant to the express terms, conditions, exclusions, and limitations of the Primary Policy, there is no liability coverage available to MVP or Miller for the claims and damages alleged in the Counterclaim.

21. The allegations of the Counterclaim do not trigger the insuring agreement of the Primary Policy. In relevant part, the Primary Policy contains two Coverages, Coverage A and Coverage B, neither of which are triggered by the allegations in the Counterclaim.

22. Coverage A of the Primary Policy only provides liability coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' … caused by an 'occurrence'" as those terms are defined in the Primary Policy. Coverage A further specifies that West American only has a duty to defend an insured against a "'suit' seeking those damages."

23. The Primary Policy defines "bodily injury" as "bodily injury, sickness or disease." The Counterclaim fails to allege "bodily injury, sickness or disease." Therefore, there is no bodily injury coverage under Coverage A of the Primary Policy.

24. The Primary Policy defines "property damage" to require either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." The Counterclaim does not allege that MVP or Miller caused any damage to property or loss of use of property. Therefore, there is no property

damage coverage under Coverage A of the Primary Policy.

25. The Primary Policy defines "occurrence" as, in relevant part, an "accident." The Counterclaim seeks recovery for conduct that was intentional in nature and alleges that the consequences of that conduct were foreseeable. Such conduct does not constitute an "accident" and therefore does not qualify as an "occurrence" under the Primary Policy. Because the Counterclaim fails to allege that any bodily injury or property damage was caused by an "occurrence," there is no coverage available under Coverage A of the Primary Policy.

26. Exclusion (a) under Coverage A of the Primary Policy excludes coverage for "bodily injury" or "property damage" which is "expected or intended from the standpoint of the insured." The Counterclaim alleges that MVP and Miller intentionally misrepresented the scope of the contract and filed this lawsuit for the purpose of obtaining the benefit of Bjorn's contractual obligations without payment. The Counterclaim thus alleges damages that should have been expected or intended from MVP's and Miller's perspective. Therefore, even if the insuring agreement of the Primary Policy is triggered, exclusion (a) bars coverage for the claims and damages alleged in the Counterclaim.

27. Coverage B of the Primary Policy only provides liability coverage for "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Coverage B further specifies that West American only has a duty to defend an insured against a "'suit' seeking those damages."

28. The Primary Policy defines "Personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the

right of private occupancy of a room, dwelling or premises that a person occupies, committed on or behalf of its owner, landlord or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right to privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'." The Counterclaim alleges none of these specific offenses. Therefore, there is no coverage under Coverage B of the Primary Policy.

29. Exclusion (a) under Coverage B of the Primary Policy excludes coverage for "'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'." The Counterclaim alleges that MVP and Miller intentionally misrepresented the scope of the project and filed the Complaint for the purpose of violating Bjorn's rights under the contract. The Counterclaim thus alleges that MVP and Miller acted knowingly and with the purpose to violate Bjorn's rights. Therefore, even if the Counterclaim alleges "personal and advertising injury," exclusion (a) operates to bar coverage under the Primary Policy.

30. Exclusion (f) under Coverage B of the Primary Policy excludes coverage for "'personal and advertising injury' arising out of a breach of contract." The Counterclaim alleges that MVP and Miller misrepresented the scope of the project and filed the Complaint for the purposes of obtaining the benefit of Bjorn's services under the contract without payment. The Counterclaim thus alleges harm that arose out of a breach of contract. Therefore, even if the Counterclaim alleges "personal and advertising injury," exclusion (f) bars coverage under the Primary Policy.

31. For these reasons, West American has no duty to defend or indemnify MVP or Miller under the Primary Policy with respect to the Counterclaim.

## V. SECOND CAUSE OF ACTION

### Declaratory Judgment – Umbrella Policy

32. The Carriers incorporate by reference all allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. The Umbrella Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

34. Pursuant to the express terms, conditions, exclusions, and limitations of the Umbrella Policy, there is no liability coverage for the claims and damages alleged in the Counterclaim.

35. The allegations of the Counterclaim do not trigger the insuring agreement of the Umbrella Policy. In relevant part, the Umbrella Policy contains two types of coverages, neither of which are triggered by the allegations in the Counterclaim.

36. With respect to "bodily injury" and "property damage," the Umbrella Policy only provides liability coverage for sums "in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of 'bodily injury' [or] 'property damage' caused by an 'occurrence.'" The "retained limit" is the greater of "1. The total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the 'Insured' during the Policy Period; or 2. The amount stated in the Declarations as Self-Insured Retention as a result of any one 'occurrence' not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the 'insured'

during the Policy Period."

37. The Umbrella Policy defines "bodily injury" as "physical injury, sickness or disease." The Counterclaim fails to allege "physical injury, sickness or disease." Therefore, there is no coverage under the Umbrella Policy.

38. The Umbrella Policy defines "property damage" to require either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." The Counterclaim does not allege that MVP or Miller caused any damage to property or loss of use of property. Therefore, there is no coverage under the Umbrella Policy.

39. The Umbrella Policy defines "occurrence" as, in relevant part, an "accident." The Counterclaim seeks recovery for conduct that was intentional in nature and alleges that the consequences of that conduct were foreseeable. Such conduct does not constitute an "accident" and therefore does not qualify as an "occurrence" under the Umbrella Policy. Because the Counterclaim fails to allege that any bodily injury or property damage was caused by an "occurrence," there is no coverage available under the Umbrella Policy.

40. Exclusion A of the Umbrella Policy excludes coverage for "bodily injury" or "property damage" which is "expected or intended from the standpoint of the insured." The Counterclaim alleges that MVP and Miller intentionally misrepresented the scope of the contract and filed this lawsuit for the purpose of obtaining the benefit of Bjorn's contractual obligations without payment. The Counterclaim thus alleges damages that should have been expected or intended from MVP's and Miller's perspective. Therefore, even if the insuring agreement of the Umbrella Policy is triggered, exclusion A bars coverage for the claims and damages alleged in the Counterclaim.

41. With respect to "Personal and advertising injury," the Umbrella Policy only provides liability coverage for sums "in excess of the "Retained Limit" that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of … 'personal and advertising injury' … caused by an 'offense' arising out of your business."

42. The Umbrella Policy defines "Personal and advertising injury" to mean "injury, other than 'bodily injury', arising out of one or more of the following offenses: 1. False arrest, detention or imprisonment; 2. Malicious prosecution; 3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed on or behalf of its owner, landlord or lessor; 4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; 5. Oral or written publication, in any manner, of material that violates a person's right to privacy; 6. The use of another's advertising idea in your 'advertisement'; or 7. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."  The Counterclaim alleges none of these specific offenses.  Therefore, there is no coverage for "personal and advertising injury" under the Umbrella Policy.

43. Exclusion J.1 of the Umbrella Policy excludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the 'Insured' with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'."  The Counterclaim alleges that MVP and Miller intentionally misrepresented the scope of the project and filed the Complaint for the purpose of violating Bjorn's rights under the contract.  The Counterclaim thus alleges that MVP and Miller acted knowingly and with the purpose to violate Bjorn's rights.  Therefore, even if the Counterclaim alleges "personal and advertising

injury," exclusion J.1 bars coverage.

44. Exclusion J.6 of the Umbrella Policy excludes coverage for "'personal and advertising injury' arising out of a breach of contract." The Counterclaim alleges that MVP and Miller misrepresented the scope of the project and filed the Complaint for the purposes of obtaining the benefit of Bjorn's services under the contract without payment. The Counterclaim thus alleges harm that arose out of a breach of contract. Therefore, even if the Counterclaim alleges "personal and advertising injury," exclusion J.6 bars coverage.

45. For these reasons, Ohio Casualty has no duty to defend or indemnify MVP or Miller under the Umbrella Policy with respect to the Counterclaim.

## VI. THIRD CAUSE OF ACTION

### Implied Contract - Recoupment of Defense Costs

46. The Carriers incorporate by reference all allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47. In offering to provide a defense under a reservation of rights, the Carriers explicitly reserved the right to recoup defense costs incurred in providing the defense in the event it was determined the Policies did not provide coverage.

48. MVP and Miller assented to the Carriers' offer to provide a defense subject to the reservation of rights, including the right to recoup defense costs.

49. MVP's and Miller's failure to object to the terms of the reservation of rights letter created an implied contract authorizing the Carriers to recoup defense costs incurred while defending under a reservation of rights if it was ultimately determined that the Policies did not provide coverage.

50. The Carriers never had an obligation to defend or indemnify MVP or Miller pursuant to the Policies. Accordingly, the Carriers are entitled to recoup their costs incurred in providing a defense under a reservation of rights.

## **REQUEST FOR RELIEF**

WHEREFORE, the Carriers pray for judgment in their favor and against MVP and Miller as follows:

A. Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that the Carriers have no duty to defend or indemnify MVP or Miller in the Underlying Action;

B. Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that the Carriers may withdraw the defense currently being provided in the Underlying Action;

C. An order declaring that an implied contract exists under which the Carriers may recoup from MVP and Miller the costs incurred in providing MVP and Miller a defense under a reservation of rights; and

D. Such other and further relief as the Court deems just and appropriate.

DATED: May 4, 2020

BULLIVANT HOUSER BAILEY PC

By */s/ Jared F. Kiess*
Jared F. Kiess

Attorneys for Plaintiffs

4836-0145-1451.1