Jared F. Kiess
BULLIVANT HOUSER BAILEY PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
jared.kiess@bullivant.com
Telephone: 206.292.8930
Facsimile: 206.386.5130

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY,<br><br>               Plaintiffs,<br><br>   v.<br><br>MVP HOLDINGS, LLC; LINDA MILLER, and BJORN JOHNSON CONSTRUCTION, LLC,<br><br>               Defendants. | No.: 9:20-cv-00059-DWM<br><br>PLAINTIFFS WEST AMERICAN INSURANCE COMPANY'S AND THE OHIO CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND .................................................................2

    A. The Underlying Action .................................................................2

    B. The Policies and the Insurance Claim ........................................5

        *1. The Primary Policy* .................................................................5

        *2. The Umbrella Policy* ...............................................................7

        *3. The Insurance Claim* ...............................................................8

III. SUMMARY JUDGMENT STANDARD ............................................9

IV. ARGUMENT ......................................................................................9

    A. The Counterclaim Does Not Trigger Coverage A Because It Does Not Allege "Property Damage" Caused by an "Occurrence" .................10

        *1. Economic Loss Resulting from the Breach of Contract Alleged in the Counterclaim Does Not Constitute "Bodily Injury" or "Property Damage"* .....................................................10

        *2. Any Injury Alleged in the Counterclaim Was Not Caused by an "Occurrence" Because it was the Foreseeable Result of Intentional Conduct* ........................................................................12

    B. The Counterclaim Does Not Trigger Coverage B Because it Does Not Allege "Personal and Advertising Injury" and any Injury Alleged is Excluded by the Policy's Breach of Contract Exclusion ........14

        *1. The Abuse of Process Claim is Not Covered Because it is Not One of the Predicate Offenses Enumerated in the Definition of "Personal and Advertising Injury"* ..........................14

        *2. The Breach of Contract Exclusion Bars Coverage Regardless of Whether Abuse of Process Constitutes "Personal and Advertising Injury"* .................................................20

V. CONCLUSION ...................................................................................22

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT   PAGE i
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.M. Welles, Inc. v. Montana Materials, Inc.*,
  2015 MT 38, 378 Mont. 173, 342 P.3d 987 ......................................................16

*Aetna Casualty & Surety Co. v. First Security Bank*,
  662 F.Supp. 1126 (D.Mont. 1987)....................................................................11

*American States Ins. Co. v. Flathead Janitorial & Rug Services, Inc.*,
  2015 MT 239, 380 Mont. 308, 355 P.3d 735 ...................................................17

*American-Hawaiian Steamship Co. v. Home Sav. & Loan Ass'n*,
  38 Cal.App.3d 73, 112 Cal.Rptr. 897 (1974) ...................................................16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).......................................9

*Atlantic Cas. Ins. Co. v. Quinn*,
  No. CV 18-76-M-DWM, 2019 WL 2550978 (D. Mont.
  June 20, 2019)...................................................................................................13

*Beaverhead County v. Montana Ass'n of Counties Joint Powers Ins.
  Auth.*,
  2014 MT 267, 376 Mont. 413, 335 P.3d 721 .............................................20, 21

*Carolina Cas. Ins. Co. v. Nanodetex Corp.*,
  733 F.3d 1018 (10th Cir. 2013) .................................................................16, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................................9

*Chandler v. Sentry Select Ins. Co.*,
  No. CV 11-46-M-DWM-JCL, 2011 WL 5325783 (D. Mont.
  Sept. 22, 2011) ..................................................................................................11

*Deist v. Thornton*,
  2009 MT 21, 349 Mont. 94, 201 P.3d 800 .......................................................18

*Dollar Plus Stores, Inc. v. R-Montana Assoc., L.P.*,
  2009 MT 164, 350 Mont. 476, 209 P.3d 216 ...................................................16

*Employers Mut. Cas. Co. v. Fisher Builders, Inc.*,
  2016 MT 91, 383 Mont. 187, 371 P.3d 375 ......................................................13

*Everest & Jennings, Inc. v. American Motorists Ins. Co.*,
  23 F.3d 226 (9th Cir. 1994) ................................................................................15

*Farmers Union Mut. Ins. Co. v. Staples*,
  2004 MT 108, 321 Mont. 99, 90 P.3d 381 ..........................................................9

*Giacomelli v. Scottsdale Ins. Co.*,
  2009 MT 418, 354 Mont. 15, 221 P.3d 666 .......................................................16

*Global NAPs, Inc. v. Federal Ins. Co.*,
  336 F.3d 59 (1st Cir. 2003)................................................................................17

*Graber v. State Farm Fire & Cas. Co.*,
  244 Mont. 265, 797 P.2d 214 (1990)................................................................11

*Heil Co. v. Hartford Acc. & Indem. Co.*,
  937 F. Supp. 1355 (E.D. Wis. 1996) .................................................................18

*Hinkle v. State Farm Fire & Cas. Co.*,
  308 P.3d 1009 (N.M. App. 2013) ......................................................................19

*Hughes v. Lynch*,
  2007 MT 177, 388 Mont. 214, 164 P.3d 913 ....................................................19

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ...............................................................................9

*Krohne Fund, LP v. Simonsen*,
  681 Fed.Appx. 635 (9th Cir. 2017).....................................................................16

*Landa v. Assur. Co. of Am.*,
  2013 MT 217, 371 Mont. 202, 307 P.3d 284 ....................................................13

*Lindsay Drilling v. U.S. Fidelity & Guar.*,
  208 Mont. 91, 676 P.2d 203 (1984)...................................................................11

*Novell, Inc. v. Federal Ins. Co.*,
  141 F.3d 983 (10th Cir. 1998) ......................................................................14, 15

*Parker Supply Co. v. Travelers Indem. Co.*,
  588 F.2d 180 (5th Cir. 1979) .............................................................................19

*Pennsylvania Pulp & Paper Co., Inc. v. Nationwide Mut. Ins. Co.*,
    100 S.W.3d 566 (Tex. App. 2003)........................................................17

*Phoenix Ins. Co. v. Ed Boland Constr., Inc.*,
    229 F.Supp.3d 1183 (D. Mont. 2017)..................................................11

*Plouffe v. Mont. Dept. of Pub. Health & Human Svcs*,
    2002 MT 64, 309 Mont. 184, 45 P.3d 10 ............................................18

*Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*,
    2009 MT 123, 350 Mont. 184, 206 P.3d 919 .....................................10

*Safeco Ins. Co. v. Munroe*,
    165 Mont. 185, 527 P.2d 64 (1974)....................................................11

*Salminen v. Morrison & Frampton, PLLP*,
    2014 MT 323, 377 Mont. 244, 339 P.3d 602 .............................18, 21

*Secura Ins. Co. v. Gorick*,
    2008 WL 341383 (W.D. Ky. Feb. 6, 2008).........................................19

*State Farm Mut. Auto. Ins. Co. v. Freyer*,
    2013 MT 301, 372 Mont. 191, 312 P.3d 403 .....................................16

*Tidyman's Management Servs, Inc. v. Davis*,
    2014 MT 205, 376 Mont. 80, 330 P.3d 1139 .....................................10

*Town of Geraldine* v. *Mt. Mun. Ins. Auth.*,
    2008 MT 411, 347 Mont. 267, 198 P.3d 796 .............................20, 21

*Travelers Cas. 7 Sur. Co. v. Ribi Immunochem Research, Inc.*,
    2005 MT 50, 326 Mont. 176, 108 P.3d 469 .......................................10

*William J. Templeman Co.* v. *Liberty Mut. Ins. Co.*,
    735 N.E.2d 669 (Ill. App. 2000)..................................................17, 19

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT    PAGE iv
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**STATUTES**

Fed. R. Civ. P. Rule 56(a) ........................................................................9

MCA § 28-3-501 .....................................................................................16

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM

PAGE v

**Bullivant|Houser|Bailey PC**

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Plaintiffs West American Insurance Company ("West American") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, the "Carriers") submit this Brief in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

West American and Ohio Casualty seek a ruling as to their obligations with respect to an underlying state court lawsuit.  In September of 2019, Defendants Linda Miller and MVP Holdings, LLC ("MVP") sued defendant Bjorn Johnson Construction, LLC ("Bjorn") alleging that Bjorn breached a "fixed bid" construction contract by failing to stay within project costs.  Bjorn thereafter filed a counterclaim alleging not only that it was Miller and MVP who breached the contract, but also that Miller and MVP committed fraud by deliberately misrepresenting the scope of the project in their solicitation for bids.  Bjorn contends that Miller and MVP purposely understated the scope of the project, hoping to leverage the unsuspecting contractor into performing additional work by repudiating the contract and filing suit.  Bjorn's counterclaim alleges claims for actual and constructive fraud, breach of contract, and abuse of process.  West American and Ohio Casualty agreed to defend MVP and Miller under policies of liability insurance issued to MVP, but reserved their right to file this declaratory judgment action and seek a ruling allowing them to withdraw from the defense.

As discussed more fully below, the allegations of the counterclaim do not implicate coverage under either of the policies' two coverage parts.  The policies contain two potentially relevant coverages—A and B.  Under Coverage A, the Carriers agreed to provide defense and indemnity coverage for liability for "bodily injury" or "property damage" caused by an "occurrence."  The Policies further define "occurrence," in relevant part, as an "accident."  Since Bjorn's counterclaim complains only of economic injury, the allegations in the counterclaim do not

constitute "bodily injury" or "property damage."  Further, Bjorn's counterclaim specifically alleges that Miller and MVP acted intentionally for the purpose of causing such injury and therefore fails to allege an "occurrence," which the policies define as an "accident."  Accordingly, the Carriers have no duty to defend or indemnify Miller or MVP under Coverage A.

The Carriers likewise have no duty to defend or indemnify Miller or MVP under Coverage B.  Coverage B applies only to liability for "personal and advertising injury" caused by one of seven specifically enumerated categories of "offenses." Here, Bjorn's counterclaim fails to allege any of the predicate offenses covered by Coverage B.  Furthermore, any coverage available under Coverage B would be subject to the policies' exclusion for injury "arising out of a breach of contract." Since the factual basis for Bjorn's abuse of process counterclaim consists entirely of Miller's and MVP's alleged scheme to deprive Bjorn of its expectancy under the Contract, the breach of contract exclusion would bar coverage irrespective of whether it constitutes a covered offense in the first instance.  Accordingly, West American and Ohio Casualty respectfully request that this Court enter an order declaring that they have no duty to defend or indemnify Miller and MVP with respect to the counterclaim and allowing them to withdraw from the defense.

## II. FACTUAL BACKGROUND

### A.  The Underlying Action

The relevant facts are taken from the pleadings on file in the underlying state court action currently pending in Montana's Fourth Judicial District Court, Missoula County, Cause No. DV-32-2019-0000977 (the "Underlying Action").  The dispute centers around an alleged breach of a construction contract.  Doing business as "Paradise Dental Technologies," nonparty PDT, Inc. ("PDT") manufactures dental instruments in a facility it leases from Defendant MVP.  (Dkt. 8-3, ¶ 4).  Defendant

Linda Miller owns and operates both companies.  (Dkt. 8-3, ¶ 1).  After outgrowing its existing facility in 2018, PDT sought to expand by constructing an addition.  (Dkt. 8-3, ¶ 5).  MVP solicited bids from general contractors and Bjorn submitted the lowest bid of approximately $1.8 million.  (Dkt. 8-3, ¶¶ 6, 7).  Relying upon Bjorn's representation that it could complete the project "at or very near" this price, Miller and MVP entered into a "Fixed Bid Construction Contract" with Bjorn (the "Contract").  (Dkt. 8-3, ¶¶ 11, 12).

As a "fixed bid" contract, the Contract allegedly prohibited Bjorn from deviating from the contract price.  (Dkt. 8-3, ¶ 16-17).  Despite this, in a Complaint filed on September 5, 2019 in the Underlying Action (the "Complaint"), Miller and MVP claim that Bjorn "unilaterally" increased the scope of the project by "insisting" that Miller and MVP agree to various change orders.  (Dkt. 8-3, ¶ 21-22).  These change orders allegedly included an HVAC system "Bjorn had previously assured MVP it would not need" and an increase in the size of the parking lot.  (Dkt. 8-3, ¶ 22).  Miller and MVP further allege that Bjorn "demanded" that they sign a blanket change order that would have given Bjorn "carte blanche" to increase the scope of the project without Miller's or MVP's consent.  (Dkt. 8-3, ¶¶ 23-24).  Miller and MVP claim Bjorn told them these and other change orders would increase the cost of the project by more than twice the amount of the $1.8 million bid, to approximately $4 million.  (Dkt. 8-3, ¶ 26).  Alleging Bjorn "intentionally underbid" the project and "fraudulently concealed" the true project costs, Miller and MVP seek to have the Contract rescinded and also to recover damages for fraud, breach of contract, and violation of the implied covenant of good faith and fair dealing.  (Dkt. 8-3, ¶¶ 8, 49, 52).

///

///

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 9:20-CV-00059-DWM

PAGE 3

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Bjorn disagrees with Miller's and MVP's characterization of events.  In an Amended Answer and Counterclaim dated April 27, 2020 (the "Counterclaim"), Bjorn contends that the architects and design professionals with whom Miller and MVP had consulted prior to soliciting bids for the project originally advised them that the project would cost at least $4 million.  (Dkt. 8-4, ¶ 9).  Knowing they could not finance this amount, Bjorn alleges Miller and MVP "reduced the nominal scope of the project" in their solicitation for bids, intending to use the unsuspecting contractor's commitment of resources as "leverage" to coerce him into completing the rest of the work without additional compensation.  (Dkt. 8-4, ¶¶ 5, 13).  Miller and MVP intended to do this, Bjorn claims, by threatening to cancel the project, firing the contractor, "and by suing him."  (Dkt. 8-4, ¶ 13).

Bjorn alleges that Miller's and MVP's conduct constitutes actual fraud, constructive fraud, breach of contract, and abuse of process.  (Dkt. 8-4, ¶¶ 18-34).  With respect to the fraud counts, Bjorn alleges that Miller and MVP "intentionally," "malicious[ly], and "fraudulent[ly]" misrepresented the scope of the project.  (Dkt. 8-4, ¶¶ 22, 26).  Bjorn claims it bid the project "without knowing of Miller's plans and intentions for attempting to 'get something for nothing.'"  (Dkt. 8-4, ¶ 6).  According to Bjorn, only after it had agreed to the Contract and committed substantial resources did it become clear that Miller and MVP were demanding a much more extensive scope of work.  (Dkt. 8-4, ¶ 1).  Bjorn alleges that Miller and MVP thereafter breached the contract by repudiating the contract and "filing … this civil action."  (Dkt. 8-4, ¶¶ 17, 19).

In the abuse of process claim, Bjorn alleges that Miller and MVP filed their Complaint in the Underlying Action for the "ulterior purpose" of forcing Bjorn to release its expectation interest under the Contract.  (Dkt. 8-4, ¶¶ 31-34).  Specifically, Bjorn alleges:

17.     Miller's repudiation of the contract and the filing of this civil action are done to deprive [Bjorn] of the benefits of its expectancy under the Contract.  Instead of simply cancelling the Contract and paying [Bjorn] its expectancy damages, Miller is attempting to force [Bjorn] into releasing its expectancy in exchange for dismissal of a civil action filed without probable cause.

…

33.     Miller filed this action for the ulterior purpose of creating leverage in avoiding payment of expectancy damages for terminating the Contract on the basis they could not afford to complete the project with the resources available to them.  Rather than proceed with an efficient breach of contract and pay damages for doing so, they are attempting to avoid the consequences of their breach in filing this civil action without probable cause.

(Dkt. 8-4, ¶¶ 17, 33).   Bjorn alleges that Miller's and MVP's conduct caused damages consisting of "harm to business reputation, attorney fees, time and effort, and lost business opportunities."  (Dkt. 8-4, ¶ 34).

## B.   The Policies and the Insurance Claim

West American and Ohio Casualty each issued policies of liability insurance to PDT and MVP, under which Miller is also an insured with respect to MVP's business.

### 1.     The Primary Policy

West American issued commercial Policy No. BKW57583156 to PDT and MVP for the policy period from November 13, 2018 to November 13, 2019 (the "Primary Policy").  (Chong Decl., Ex. "A" (hereafter, "Primary Policy")).  The Primary Policy provides up to $1 million in liability coverage per occurrence, subject to various terms, conditions, exclusions, and limitations.  (*See* Primary Policy, Declarations).

///

///

The Primary Policy contains two insuring agreements: Coverage A and Coverage B.  Under Coverage A, the Primary Policy provides liability coverage for "bodily injury" or "property damage" caused by an "occurrence":

> **SECTION I - COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>    …
>    **b.** This insurance applies to "bodily injury" and "property damage" only if:
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" …

(Primary Policy, Form CG00010413 at 1).  The Primary Policy defines the relevant terms as follows:

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> **17.** "Property damage" means:
>    **a.** Physical injury to tangible property, including all resulting loss of use of that property. …; or
>    **b.** Loss of use of tangible property that is not physically injured. …

(Primary Policy, Form CG00010413 at 14-17).  The Primary Policy excludes from Coverage A any "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured."  (Primary Policy, Form CG00010413 at 2).

Under Coverage B, the Primary Policy provides liability coverage for amounts "the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' … caused by an offense arising out of your business." (Primary Policy, Form CG00010413 at 6).  The Policy defines "personal and advertising injury" as follows:

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Primary Policy, Form CG00010413 at 16).

Under Coverage B, the Primary Policy excludes coverage for any personal and advertising injury that arises out of a breach of contract. Specifically, the Primary Policy provides:

> **2. Exclusions**
> This insurance does not apply to: …
>     **f.** Breach Of Contract
>         "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

(Primary Policy, Form CG00010413 at 7).

### *2. The Umbrella Policy*

Ohio Casualty issued Commercial Umbrella Policy No. USO57583156 to PDT for the same policy period (the "Umbrella Policy"). (Chong Decl., Ex. "B", (hereafter, the "Umbrella Policy")). Subject to its terms, conditions, exclusions, and

limitations, the Umbrella Policy provides up to $3 million in liability coverage for sums "in excess of the 'retained limit.'" (Umbrella Policy, Form CU60020697 at 1, Form CU88300714 at 1). The Umbrella Policy defines "retained limit," in relevant part, as the "total amount stated as the applicable limits of the [Primary Policy]." (Umbrella Policy, Form CU60020697 at 2, Declarations).

The Umbrella Policy provides coverage on the same basis as the Primary Policy, using nearly identical language. As amended by General Amendatory Endorsement, Form CU88300714, the Umbrella Policy provides coverage for liability "because of 'bodily injury' [or] 'property damage' … caused by an occurrence" or for 'personal and advertising injury' … caused by an 'offense' arising out of your business." (Umbrella Policy, Form CU88300714 at 1). The Umbrella Policy defines these terms in substantially identical fashion as the Primary Policy. (*See* Umbrella Policy, Form CU60020697 at 6, 9, Form CU88300714 at 4). Like the Primary Policy, the Umbrella Policy also contains exclusions for bodily injury or property damage "expected or intended from the standpoint of the 'insured'" and for personal and advertising injury "arising out of a breach of contract." (Umbrella Policy, Form CU60020697 at 3, Form CU88300714 at 3).

### 3. *The Insurance Claim*

Miller and MVP tendered the defense of the counterclaim to West American. (Chong Decl., Ex. "C"). West American agreed to provide a defense but explained that various provisions of the Policies may apply to limit or exclude coverage. (Id.). Among other provisions, the Carriers explained that it appeared that the claims and damages alleged in the Counterclaim did not constitute "bodily injury," "property damage," or "personal and advertising injury" as required by the Policies. (Id.). The Carriers also explained that it appeared that the injuries alleged were not caused by an "occurrence" as defined in the Policies. (Id.). In addition, the Carriers informed

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 9:20-CV-00059-DWM

PAGE 8

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Miller and MVP that the breach of contract exclusion may bar coverage.  (Id.).  The Carriers therefore agreed to provide a defense subject to a full reservation of rights, including the right to file a declaratory judgment action and withdraw from the defense of the Counterclaim.  (Id.).

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  Once the moving party satisfies its initial burden of "pointing out … that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the burden shifts to the opposing party to show by more than a "metaphysical doubt" that a genuine dispute of material fact exists, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  A dispute is "genuine" only when a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the nonmoving party fails to make a sufficient showing as to an essential element of her case with respect to which she bears the burden of proof, the moving party "is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

## IV. <u>ARGUMENT</u>

The Carriers are entitled to summary judgment because the undisputed facts unequivocally demonstrate that the Carriers have no obligation to defend Miller and MVP under either Coverage A or Coverage B of the Policies.  A liability insurer's duty to defend its insured is generally determined by the allegations within the four corners of the underlying complaint.  *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, 90 P.3d 381.  In light of the potential adverse consequences that attend a denial of the duty to defend, Montana courts have made

clear that "the prudent course of action is to defend the insured under a reservation of rights and file a declaratory judgment action to discern coverage." *Tidyman's Management Servs, Inc. v. Davis*, 2014 MT 205, ¶ 23, 376 Mont. 80, 330 P.3d 1139. In the declaratory judgment action, the insured bears the burden to prove the allegations come within the policy's insuring agreement, while the insurer bears the burden of establishing the applicability of policy exclusions. *Travelers Cas. 7 Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶¶ 18-21, 326 Mont. 176, 108 P.3d 469. An insurer has no duty to defend where the allegations unequivocally demonstrate a lack of coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 32, 350 Mont. 184, 206 P.3d 919.

## A.   The Counterclaim Does Not Trigger Coverage A Because It Does Not Allege "Property Damage" Caused by an "Occurrence"

The allegations of the Counterclaim unequivocally demonstrate that there is no coverage under Coverage A of the Primary Policy and the associated coverages in the Umbrella Policy because they do not allege "property damage" or "bodily injury" caused by an "occurrence." The insuring agreement of Coverage A makes clear that coverage exists only for the insured's liability for damages that satisfy the definitions of "bodily injury" or "property damage" and only when that injury or damage is "caused by an 'occurrence.'" Because the Counterclaim does not satisfy either of these requirements, the Carriers have no duty to defend under Coverage A.

### 1.   *Economic Loss Resulting from the Breach of Contract Alleged in the Counterclaim Does Not Constitute "Bodily Injury" or "Property Damage"*

The economic loss alleged in the Counterclaim does not satisfy the Policy's definitions of "bodily injury" or "property damage." As an initial matter, Miller and MVP concede that Bjorn's Counterclaim fails to allege "bodily injury." (Dkt. 8 at

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT   PAGE 10   Bullivant|Houser|Bailey PC
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

¶¶ 23, 37).  Accordingly, there is no genuine dispute that the Policies do not afford "bodily injury" coverage.

Neither do the allegations satisfy the Policy's definition of "property damage."  The Policies define "property damage" to require "physical injury to" or "loss of use of" "tangible property."  Pure economic loss, without more, does not constitute "property damage" under either prong of this definition because it does not amount to an injury to or loss of use of tangible property.  *Graber v. State Farm Fire & Cas. Co.*, 244 Mont. 265, 269, 797 P.2d 214, 216 (1990); *Chandler v. Sentry Select Ins. Co.*, No. CV 11-46-M-DWM-JCL, 2011 WL 5325783, *4 (D. Mont. Sept. 22, 2011) (collecting cases); *see also Phoenix Ins. Co. v. Ed Boland Constr., Inc.*, 229 F.Supp.3d 1183 (D. Mont. 2017) (holding that increased construction costs did not constitute "property damage" under liability policy).  Rather, "Montana Courts have consistently held that in order for economic loss to be covered by insurance a direct physical injury to tangible property must occur."  *Graber*, 244 Mont. at 216 (citing *Safeco Ins. Co. v. Munroe*, 165 Mont. 185, 527 P.2d 64 (1974); *Lindsay Drilling v. U.S. Fidelity & Guar.*, 208 Mont. 91, 676 P.2d 203 (1984); *Aetna Casualty & Surety Co. v. First Security Bank*, 662 F.Supp. 1126 (D.Mont. 1987)).

Bjorn alleges no such injury here.  The damages alleged in Bjorn's counterclaim consist entirely of "lost profits and business opportunities," "harm to business reputation," and "attorney fees, time and effort." (Dkt. 8-4, ¶¶ 24, 34).  These are precisely the sort of purely economic injuries courts have long held insufficient to constitute "property damage" under a CGL policy.  In *Graber*, for example, the Montana Supreme Court specifically held that a complaint alleging a "substantial loss of revenues, … irreparable injury to its reputation and goodwill" did "not, as a matter of law," constitute "property damage."  *Graber*, 244 Mont. at 269-70.  Subsequent cases have reached the same conclusion.  *See, e.g., Chandler*,

2011 WL 5325783 at *4 (holding that wage loss claim "does not involve 'tangible property' and does not constitute 'property damage.'"). Because Bjorn fails to allege injury to or loss of use of tangible property, the Counterclaim does not allege "property damage" as required by the Policies.

The fact that these economic injuries stem from a dispute regarding construction of tangible property does not affect this result. In their Brief in Support of Motion for Stay (Dkt. 12), Miller and MVP suggest that Bjorn's counterclaim alleges property damage because Bjorn lost the "use" of "the steel building" and "drawings and plans" it created to fulfill the contract. (Dkt. 12 at 3-4). This is a flawed interpretation of the Counterclaim. Bjorn specifically claims he purchased these items for the sole purpose of conveying them to MVP. (Dkt. 8-4, ¶ 15). What Bjorn "lost," therefore, was not the drawings and building itself—Bjorn never expected to retain these items in the first place—but rather the money MVP agreed to pay in exchange. (*See* Dkt. 8-4 at ¶ 16) (alleging Miller seeks to "gain the benefits of B[jorn's] extensive work to date *without paying for it*…") (emphasis added). This is no different from the lost revenues courts have consistently held do not constitute "property damage."

As a result, because the Counterclaim does not allege any "bodily injury" or "property damage," there is no coverage available under Coverage A of the Primary Policy or the associated coverage of the Umbrella Policy.

**2.    *Any Injury Alleged in the Counterclaim Was Not Caused by an "Occurrence" Because it was the Foreseeable Result of Intentional Conduct***

Independently of the requirements of "bodily injury" or "property damage," there is no coverage under Coverage A for the additional reason that the alleged conduct was not accidental. Under the Policies, "bodily injury" or "property damage" coverage applies only when the damages are "caused by an 'occurrence,'"

which the Policies further define as an "accident."   Under Montana law, an intentional act cannot constitute an "accident" where it resulted in consequences that were objectively foreseeable to a reasonable insured.   *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 2016 MT 91, ¶ 15, 383 Mont. 187, 371 P.3d 375; *Landa v. Assur. Co. of Am.*, 2013 MT 217, ¶ 18, 371 Mont. 202, 307 P.3d 284.   Because a reasonable insured would expect the injurious consequences that result from an alleged fraud in the inducement and deliberate breach of contract, Montana courts have held that such claims do not constitute an "occurrence" as a matter of law.   *See Fisher Builders*, ¶ 19.

There can be no genuine dispute that Bjorn's alleged injuries were the objectively foreseeable result of MVP's and Miller's alleged conduct.   Bjorn alleges its injuries were not only foreseeable, but purposefully inflicted.   The Counterclaim alleges a systematic pattern of "intentional" and "willful" misconduct, beginning with Miller's and MVP's intentional reduction of the nominal scope of the project and continuing through to the filing of the Complaint.   This is not a case of defective performance.   *Cf. Atlantic Cas. Ins. Co. v. Quinn*, No. CV 18-76-M-DWM, 2019 WL 2550978, *4 (D. Mont. June 20, 2019).   And Bjorn's Counterclaim contains no allegations of negligence.   Rather, Bjorn's alleged injuries arise exclusively from Miller's and MVP's allegedly deliberate decision to understate the scope of the project for the purpose of "leveraging" him into performing without compensation. These allegations are indistinguishable from those which the Montana Supreme Court has held unequivocally demonstrate a lack of coverage.   *Fisher Builders*, ¶ 18 (reviewing *Landa* and holding that insured should have reasonably expected injuries based on allegedly "intentional misrepresentations to a prospective buyer.").   In short, even if Bjorn's injuries could constitute "bodily injury" or "property damage"

(which they do not), Coverage A would provide no coverage because those injuries were not caused by an "occurrence."

* * * *

For these reasons, the allegations of the Counterclaim unequivocally demonstrate a lack of coverage under Coverage A of the Primary Policy and the associated coverage for "bodily injury" and "property damage" under the Umbrella Policy.

**B.    The Counterclaim Does Not Trigger Coverage B Because it Does Not Allege "Personal and Advertising Injury" and any Injury Alleged is Excluded by the Policy's Breach of Contract Exclusion**

The allegations of the Counterclaim also unequivocally demonstrate a lack of coverage under Coverage B of the Primary Policy and the associated coverage for "personal and advertising injury" of the Umbrella Policy.  Again, this result obtains for either of two independent reasons.  First, because the Counterclaim fails to allege any of the enumerated predicate offenses required to satisfy the Policy's definition of "personal and advertising injury."  And second, because the alleged injury arose out of a breach of contract, triggering the Policy's breach of contract exclusion. Either provision provides a sufficient basis to grant the Carriers' motion.

*1.    The Abuse of Process Claim is Not Covered Because it is Not One of the Predicate Offenses Enumerated in the Definition of "Personal and Advertising Injury"*

As an initial matter, the Policies do not afford coverage for the Counterclaim because the Counterclaim fails to allege one of the "offenses" enumerated in the definition of "personal and advertising injury."  The insuring agreement of Coverage B extends only to liability for "damages because of 'personal and advertising injury' ... caused by an offense."  Like most CGL policies, the Policies define "personal and advertising injury" as consisting of injury arising out of any one of seven "specifically listed" categories of "predicate offenses."  *Novell, Inc. v. Federal Ins.*

*Co.*, 141 F.3d 983, 986 (10th Cir. 1998).  Unless the underlying complaint alleges one of these specific predicate offenses, Coverage B does not apply.  *Novell*, 141 F.3d at 987-88; *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226 (9th Cir. 1994).

The Counterclaim at issue here fails to allege any of these specific predicate offenses.  The Policy lists the following offenses in the definition of "personal and advertising injury":

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Primary Policy, Form CG00010413 at 16).  None of Bjorn's counterclaims—for actual and constructive fraud, breach of contract, and abuse of process—are listed. As a result, the allegations do not implicate the insuring agreement of Coverage B.

The Court should reject any argument that the abuse of process counterclaim implicates coverage under sub-section (b) for "malicious prosecution."  Although no Montana case has addressed this question, basic principles of policy interpretation and persuasive precedent from other jurisdictions demonstrates that it does not.  In Montana, "[i]nsurance agreements are contracts that are subject to general rules of

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT    PAGE 15
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

contract law." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 27, 372 Mont. 191, 312 P.3d 403.  Unless the language of the policy is fairly susceptible to more than one interpretation, both of which are reasonable, the court must simply apply the policy language as written.  *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 32, 354 Mont. 15, 221 P.3d 666.  In determining the meaning of policy language, courts often accord undefined terms their "ordinary and popular" meaning. § 28-3-501, MCA.  Where, however, contractual language indicates that the parties used a particular term in a technical sense, the technical meaning "must be followed."  § 28-3-501, MCA; *A.M. Welles, Inc. v. Montana Materials, Inc.*, 2015 MT 38, ¶ 15, 378 Mont. 173, 342 P.3d 987; *Dollar Plus Stores, Inc. v. R-Montana Assoc., L.P.*, 2009 MT 164, ¶ 17, 350 Mont. 476, 209 P.3d 216.

As numerous courts have held, the phrase "malicious prosecution," by itself, provides sufficient indicia that the parties intended the term to have its technical legal meaning.  In determining whether the parties used a given term in a particular sense, courts first ask whether the words at issue are of a type "whose very use implies" a "technical significance."  *American-Hawaiian Steamship Co. v. Home Sav. & Loan Ass'n*, 38 Cal.App.3d 73, 112 Cal.Rptr. 897 (1974); *see also Krohne Fund, LP v. Simonsen*, 681 Fed.Appx. 635 (9th Cir. 2017) (applying Montana law) (holding that relevant language "is a technical term" based solely on the fact that it referred exclusively to technical subject matter).  Where the words have only a technical meaning and "are not a part of common speech," the usage of these terms itself demonstrates that the parties intended them to have a technical legal meaning. *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022-23 (10th Cir. 2013) (applying New Mexico law).  Because "malicious prosecution" is "obvious legal jargon," and has no ordinary meaning apart from its legal significance, most courts have concluded that the term should be construed in accordance with its common

law meaning.  *Nanodetex*, 733 F.3d at 1022-23; *Global NAPs, Inc. v. Federal Ins. Co.*, 336 F.3d 59, 63 (1st Cir. 2003) ("An 'ordinary meaning' approach to construing malicious prosecution claims has been rejected by a majority of jurisdictions"); *Pennsylvania Pulp & Paper Co., Inc. v. Nationwide Mut. Ins. Co.*, 100 S.W.3d 566, 574 (Tex. App. 2003) ("The common law created the term 'malicious prosecution' and it has always had a specific legal meaning."); *William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.3d 669, 679 (Ill. App. 2000) ("The term has long denoted a separate and independent tort catalogued and discussed by Blackstone in the eighteenth century.").

This conclusion finds further support in the context in which the term "malicious prosecution" appears within the policy.  Under Montana law, an insurance policy is interpreted "as a whole" in a way that reconciles its various parts. *American States Ins. Co. v. Flathead Janitorial & Rug Services, Inc.*, 2015 MT 239, ¶ 19, 380 Mont. 308, 355 P.3d 735.  Here, the term "malicious prosecution" appears in a list of what the policy describes as "offenses," along with six other categories of torts denominated in exclusively legal terminology.  Specifically, the Policy provides coverage for "false arrest," "slander," "libel," copyright infringement, and "invasion of privacy," all of which are legal terms of art that do not have an "ordinary meaning" apart from that developed by the common law.  A reasonable insured confronted with such patently legal terminology would naturally expect it to have the meaning "lawyers make of it." *Nanodetex*, 733 F.3d at 1023.

Further, by taking care to distinguish between similar but technically distinct torts, the enumeration of offenses in Coverage B demonstrates that the policy would have included the term "abuse of process" had the drafters intended for coverage to apply.  In subsection (d), for example, the Policy specifically includes both types of defamation, "slander" and "libel."  Similarly, in subsection (a), the Policy includes

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT
NO. 9:20-CV-00059-DWM                    PAGE 17    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

both torts of "false arrest" and "false imprisonment."  By specifically enumerating particular torts, the Policy demonstrates not only an intent to use these terms in their technical legal sense, but also an ability to group together related torts where the drafters intended for coverage to apply.

The Policy's careful inclusion of related torts these subsections stands in stark contrast to its omission of "abuse of process" from subsection (b).  Abuse of process is an equally well-defined cause of action, which the policy could have listed along with "malicious prosecution" had the drafters intended to provide coverage for such a claim.  The tort of abuse of process is, however, "more broadly defined than the tort of malicious prosecution" and often provides a remedy in situations where malicious prosecution will not.  *Heil Co. v. Hartford Acc. & Indem. Co.,* 937 F. Supp. 1355, 1362-63 (E.D. Wis. 1996).  Notably, a malicious prosecution claimant bears the burden to plead and prove six specific elements,[1] including "malice," a "lack of probable cause," and a termination of the action in its favor.  *Deist v. Thornton*, 2009 MT 21, ¶ 9 n.1, 349 Mont. 94, 201 P.3d 800.  "Malice" in this context requires an intent not only to engage in the conduct complained of, but a specific intent "to vex, annoy, or injure" the opposing party.  *Plouffe v. Mont. Dept. of Pub. Health & Human Svcs*, 2002 MT 64, ¶ 28, 309 Mont. 184, 45 P.3d 10.  The tort of abuse of process, by contrast, is much less stringent.  It requires only two elements: (1) willful use of process not proper in the regular conduct of the proceeding; and (2) an ulterior purpose. *Salminen v. Morrison & Frampton, PLLP*, 2014 MT 323, ¶ 29 n.4, 377

---

[1] The six elements are: (1) a judicial proceeding commenced against the party alleging malicious prosecution; (2) the other party's responsibility for instigating the proceeding; (3) a want of probable cause for the other party's action; (4) the existence of malice as the motivator behind the other party's action; (5) the termination of the proceeding in favor of the alleging party; and (6) damages suffered by the party alleging malicious prosecution.  *Deist v. Thornton*, 2009 MT 21, ¶ 9 n.1, 349 Mont. 94, 201 P.3d 800.

Mont. 244, 339 P.3d 602.  The claimant need not show an intent to injure but may establish the intent component simply by showing that the other party sought to obtain an advantage that was collateral to the purpose of the lawsuit.  *Hughes v. Lynch*, 2007 MT 177, ¶ 21, 388 Mont. 214, 164 P.3d 913.  And importantly, the absence of a requirement that the action terminated in its favor makes it far easier for a defendant in a lawsuit to attach an abuse of process counterclaim to any responsive pleading.  In light of these crucial differences between the two torts, courts have recognized that allowing coverage for an abuse of process claim would "present an increased coverage risk" above what the parties contracted for.  *William J. Templeman Co.*, 735 N.E.2d at 679.  This context leads naturally to the inference that the conspicuous omission of "abuse of process" from Coverage B was deliberate and intentional.

For these reasons, a majority of courts to consider this question have concluded that a complaint asserting a claim for abuse of process is not covered under Coverage B.  *Hinkle v. State Farm Fire & Cas. Co.*, 308 P.3d 1009, 1015 (N.M. App. 2013) (noting that "the majority of courts" have concluded that Coverage B does not afford coverage for abuse of process) (collecting cases); *see also Parker Supply Co. v. Travelers Indem. Co.,* 588 F.2d 180 (5th Cir. 1979) ("the policies' reference to the offense of "malicious prosecution" was not ambiguous and only a suit against Parker for that offense would have created an obligation for the insurers to defend and indemnify."); *Secura Ins. Co. v. Gorick,* 2008 WL 341383 n.1 (W.D. Ky. Feb. 6, 2008) ("abuse of process is not included among the definitions of "personal and advertising injury" for which the policy provides coverage; therefore, the court will consider only the claims of malicious prosecution.").  The majority rule is consistent with Montana principles of policy interpretation and Montana common law.  This Court should adopt it.

WEST AMERICAN'S AND OHIO CASUALTY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 9:20-CV-00059-DWM        PAGE 19        Bullivant|Houser|Bailey PC

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

In short, because abuse of process is not a covered predicate offense under the Policies, Bjorn's Counterclaim does not trigger the insuring agreement of Coverage B. The Carriers have no duty to defend MVP and Miller against the Underlying Counterclaim.

### 2. The Breach of Contract Exclusion Bars Coverage Regardless of Whether Abuse of Process Constitutes "Personal and Advertising Injury"

Even if the abuse of process Counterclaim did trigger the insuring agreement of Coverage B, there would still be no coverage available because any injury arose out of MVP's alleged breach of contract. Both Policies specifically provide that the coverage afforded under Coverage B "does not apply to … 'personal and advertising injury' … arising out of a breach of contract." As the language of the exclusion makes clear, it bars coverage not only for claims for breach of contract, but to all injury "arising out of" a breach of contract. Consistent with Montana law, under which the duty to defend turns on the "acts giving rise to the complaint" and not its "legal theories or conclusory language," the Montana Supreme Court has repeatedly applied nearly identical policy language to relieve an insurer of its duty to defend tort claims that share a "factual basis" with a breach of contract claim. *Beaverhead County v. Montana Ass'n of Counties Joint Powers Ins. Auth.,* 2014 MT 267, ¶¶ 18, 19, 376 Mont. 413, 335 P.3d 721. *Town of Geraldine* v. *Mt. Mun. Ins. Auth.,* 2008 MT 411, ¶ 24, 347 Mont. 267, 198 P.3d 796.

The court applied this exclusion to similar facts in *Beaverhead County* and *Town of Geraldine*. In both cases, a contractor sued the local government for misrepresenting scope of work in a government contract and "demanding" performance beyond the agreed scope. *Geraldine*, ¶ 3; *Beaverhead County*, ¶¶ 3-4. In addition to a breach of contract claim, both contractors asserted tort claims, alleging that the governments' conduct amounted to negligent misrepresentation and

constructive fraud.  *Geraldine*, ¶ 3; *Beaverhead County*, ¶ 4.  The respective governments' insurer declined coverage, relying upon exclusions for liability "arising out of" a "breach of contract."  *Geraldine*, ¶ 16; *Beaverhead County*, ¶ 7. In both cases, the Montana Supreme Court upheld the insurer's decision and rejected the insureds argument that the inclusion of the tort claims mandated coverage.  The Court emphasized that "it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Geraldine*, ¶ 24; *Beaverhead County*, ¶ 16.  Because the gravamen of the cause of action consisted of governments' alleged failure to perform its contractual obligations as set forth in the scope of work, and this same document also formed the basis for the alleged misrepresentation and fraud claims, the Montana Supreme Court held that the tort claims "arose out of" a breach of contract and were subject to the exclusion.  *Geraldine*, ¶¶ 23, 25; *Beaverhead County*, ¶¶ 16-18.

The same reasoning applies with equal or greater force in the present case. The conduct supporting Bjorn's abuse of process claim is nothing more than the final step in Miller's and MVP's alleged scheme to "deprive B[jorn] of the benefits of its expectancy under the Contract."  (Dkt. 8-4, ¶ 17).  As noted above, to state a claim for abuse of process, the claimant must allege that the opposing party filed a lawsuit for an "ulterior purpose."  *Salminen*, ¶ 29 n.4.  In his Counterclaim, Bjorn makes clear that the "ulterior purpose" supporting his abuse of process claim is Miller's and MVP's attempt to "creat[e] leverage in avoiding payment of expectancy damages for terminating the Contract."  (Dkt. 8-4, ¶ 33).  This, Bjorn contends, Miller and MVP intended to do all along.  Much like misrepresentation and fraud claims in *Town of Geraldine* and *Beaverhead County*, Bjorn's abuse of process claim clearly shares a factual basis with the alleged breach of contract that forms the gravamen of its Counterclaim.  Because both are predicated upon an alleged effort to avoid their

obligations under the Contract, the abuse of process claim "arises out of" a breach of contract and is subject to the exclusion.

Accordingly, the Policies' breach of contract exclusion bars coverage for the claims and damages alleged in the complaint irrespective of whether they trigger the insuring agreement of Coverage B.

## V. <u>CONCLUSION</u>

For these reasons, the West American and Ohio Casualty respectfully request that their Motion for Summary Judgment be granted.

DATED:  August 7, 2020

BULLIVANT HOUSER BAILEY PC


By  */s/ Jared F. Kiess*
  Jared F. Kiess

  Attorney for Plaintiffs West American
  Insurance Company and The Ohio Casualty
  Insurance Company


  Pursuant to Local Rule 7.1(d)(2)(E), I certify
  that this brief contains 6,464 words, excluding
  the caption, certificate of compliance, table of
  contents, table of authorities, exhibit index, and
  any certificate of service, as calculated by
  Microsoft Word word processing software in
  compliance with Local Rule 7.1(d)(2)(A).

## INDEX OF EXHIBITS

| Exhibit | Declaration | Description | Pages |
|---------|-------------|-------------|-------|
| "A" | Kimberly Chong | Policy No. BKW57583156 | *passim* |
| "B" | Kimberly Chong | Policy No. USO57583156 | *passim* |
| "C" | Kimberly Chong | Reservation of Rights Letter | 8-9 |

4810-6074-1575.1