Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-664
npjones@boonekarlberg.com
tleonard@boonekarlberg.com

*Attorneys for Defendants MVP Holdings, LLC
and Linda Miller*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, | Cause No. 9:20-CV-00059-DWM |
| Plaintiffs, | **DEFENDANTS MVP HOLDINGS, LLC AND LINDA MILLER'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| MVP HOLDINGS, LLC; LINDA MILLER; AND BJORN JOHNSON CONSTRUCTION, LLC, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………1

BACKGROUND…………………………………………………………...1

SUMMARY JUDGMENT STANDARD…………………………………….4

ANALYSIS…………………………………………………………………...4

I.      THE INSURERS HAVE NOT MADE AN UNEQUIVOCAL
        DEMONSTRATION THAT PERSONAL AND ADVERTISING
        INJURY IS NOT ALLEGED IN THE UNDERLYING ACTION…………6

        A.      The Abuse of Process Claim Alleges Personal and Advertising
                Injury………………………………………………………………6

        B.      The Breach of Contract Exclusion Has No Application Because
                an Alleged Abuse of Legal Process Does Not Arise From a Breach
                of Contract……………………………………………………...15

II.     THE INSURERS HAVE NOT MADE AN UNEQUIVOCAL
        DEMONSTRATION THAT PROPERTY DAMAGE IS NOT
        ALLEGED IN THE UNDERLYING ACTION…………………………...18

        A.      The Underlying Action Alleges Loss of Use of Tangible
                Property Not Physically Injured……………………………..18

        B.      The Property Damage Was Caused by an Occurrence……………...20

CONCLUSION…………………………………………………………...24

# TABLE OF AUTHORITIES

**Federal Cases**                                                              **Page(s)**

*Aetna Cas. & Sur. Co. v. First Sec. Bank*,
   662 F. Supp. 1126 (D. Mont. 1987) ........................................................... 13, 19

*Bell v. Cameron Meadows Land Co.*,
   669 F.2d 1278 (9th Cir. 1982) ............................................................................ 4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................... 4

*Chandler v. Sentry Select Ins. Co.*,
   2011 U.S. Dist. LEXIS 128779 (D. Mont. Sep. 22, 2011) .............................. 19

*Elecs. for Imaging Inc. v. Atl. Mut. Ins. Co.*,
   2006 U.S. Dist. LEXIS 90882 (N.D. Cal. Dec. 15, 2006) ................................. 8

*Hanson v. Employers Mut. Cas. Co.*,
   336 F. Supp. 2d 1070 (D. Mont. 2004) .................................................... 9, 10, 11

*Hector v. Wiens*,
   533 F.2d 429 (9th Cir. 1976) .............................................................................. 4

*Koehring Co. v. American Mutual Liability Insur. Co.*,
   564 F. Supp. 303 (E.D. Wis. 1983) ........................................................... 7, 9-10

*Kremen v. Cohen*,
   325 F.3d 1035 (9th Cir. 2003) ......................................................................... 12

*Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*,
   1999 U.S. Dist. LEXIS 23858 (M.D. La. Jan. 11, 1999) ................................. 10

*Lunsford v. Am. Guar. & Liab. Ins. Co.*,
   18 F.3d 653–56 (9th Cir. 1994) ......................................................... 6, 7, 8, 11

*Martin's Herend Imports, Inc. v. Twin City Fire Ins. Co.*,
   2000 U.S. Dist. LEXIS 8690 (S.D. Tex. March 31, 2000) ................................. 9

*Murray v. BEJ Minerals, LLC*,
   924 F.3d 1070 (9th Cir. 2019) ......................................................................... 12

*Northland Cas. Co. v. Nw. Log Homes, LLC*,
   713 F. App'x 713 (9th Cir. 2018) ............................................................... 22-23

*Peterborough Oil Co. v. Great Am. Ins. Co.*,
397 F. Supp. 2d 230 (D. Mass. 2005) ............................................................ 17

*Phoenix Insurance Company v. Ed Boland Construction, Inc.*,
229 F.Supp.3d 1183 (D. Mont. 2017) ............................................................ 20

*Safeco Ins. Co. of America v. Tunkle*,
997 F.Supp. 1356 (D. Mont. 1998) ............................................................ 23

*W. Heritage Ins. Co. v. Slopeside Condo. Ass'n*,
371 F. Supp. 3d 828 (D. Mont. 2019) ............................................................ 23

**State Cases**

*A.M. Welles, Inc. v. Mont. Materials, Inc.*,
342 P.3d 987 (Mont. 2015) ............................................................ 12

*Beaverhead Cnty. v. Mont. Ass'n of Cntys. Joint Powers Ins. Auth.*,
335 P.3d 721 (Mont. 2014) ............................................................ 15

*Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*,
209 P.3d 216 (Mont. 2009) ............................................................ 12

*Employers Mut. Cas. Co. v. Fisher Builders*,
371 P.3d 375 (Mont. 2016) ............................................................ 21

*Farmers Union Mut. Ins. Co. v. Staples*,
90 P.3d 381 (Mont. 20014) ............................................................ 5

*Graber v. State Farm Fire & Cas. Co.*,
797 P.2d 214 (1990) ............................................................ 19

*Huckins v. United Servs. Auto Ass'n*,
396 P.3d 121 (Mont. 2017) ............................................................ 22

*J & C Moodie Props., Ltd. Liab. Co. v. Deck*,
384 P.3d 466 (Mont. 2016) ............................................................ 4

*Landa v. Assurance Co.*,
307 P.3d 284 (Mont. 2013) ............................................................ 21

*Lindsay Drilling & Contracting v. United States Fid. & Guar. Co.*,
676 P.2d 203 (1984) ............................................................ 20

*Morrow v. Bank of Am., N.A.*,
324 P.3d 1167 (Mont. 2014) ....................................................................... 23-24

*Pablo v. Moore*,
995 P.2d 460 (Mont. 2000) ................................................................. 18

*Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*,
206 P.3d 919 (Mont. 2009) ................................................................. 5

*Siepel v. Olympic Coast Invs.*,
188 P.3d 1027 (Mont. 2008) ........................................................... 8, 17

*St. Paul Fire and Marine Ins. Co. v. Tingley Systems, Inc.*,
722 So.2d 849 (Fla. 2d Dist. App. 1998) ............................................ 9

*State Farm Fire & Cas. Co. v. Schwan*,
308 P.3d 48 (Mont. 2013) ................................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Ferrin*,
54 P.3d 21 (Mont. 2002) ............................................................... 17-18

*State Farm v. Lien*,
1994 Mont. Dist. LEXIS 317 (Mont. Dist. 1994) ............................. 24

*Stutzman v. Safeco Ins. Co. of Am.*,
945 P.2d 32 (1997) ............................................................................. 8

*Swank Enters. v. All Purpose Servs., Ltd.*,
154 P.3d 52 (Mont. 2007) ............................................................... 15

*Toll Bros. Inc. v. General Acc. Ins. Co.*,
1999 WL 74426 (Del. Super. August 4, 1999) .................................. 9

*Town of Geraldine v. Mont. Mun. Ins. Auth.*,
198 P.3d 796 (Mont. 2008) ................................................. 15, 16, 17

*Towne Realty v. Zurich Ins. Co.*,
534 N.W.2d 886 (Ct. App. 1995) ............................................... 13, 14

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 1

Fed. R. Civ. P. 56(c) .................................................................................. 4

Mont. R. App. P. 15(3) ............................................................................ 12

**Statutes**

Mont. Code Ann. § 28-3-501 ............................................................. 10, 11

**Other**

W. Page Keeton et al., Prosser & Keeton on Torts § 121 ...............................7, 8, 11

# INTRODUCTION

Plaintiffs West American Insurance Company and The Ohio Casualty Insurance Company (collectively, "Insurers") contend they have no duty to defend their Montana insured, and by extension, no duty to indemnify. They argue these questions can be determined as a matter of law under Fed. R. Civ. P. 56, but they are mistaken. Their motion should be denied, first, because it is premature. It is premature for all the reasons set forth by Defendants MVP Holdings, LLC and Linda Miller (collectively, "Miller") in their fully-briefed and currently-pending motion for stay. (Doc. 11, 12, 22.) Second, even if a stay is denied and the Court is inclined to consider the Insurers' summary judgment motion at this early stage, the motion fails on the merits. The underlying claims against Miller allege facts which, if proven, would result in coverage for both "personal and advertising injury" and "property damage" under the subject policies of insurance. In either case, the Insurers' motion for summary judgment should be denied.

# BACKGROUND

Miller owns a dental equipment manufacturing company located just outside Missoula. (Statement of Disputed Facts ("SDF"), ¶ 22.) To protect herself against the risk that a liability claim might be made against her, she purchased a commercial liability policy from West American Insurance Company and an umbrella policy from The Ohio Casualty Company. (SDF, ¶ 23.) The policies

1

were in effect during the November 13, 2018 to November 13, 2019 policy period. (Doc. 1, ¶¶ 10, 11.)

In September 2019, Miller was compelled to file a lawsuit against Defendant Bjorn Johnson Construction, LLC ("Bjorn"), a contractor she had hired to perform construction work. (SDF, ¶ 24.) More specifically, she wanted to expand the company's facility by building a 16,782 square foot addition. (SDF, ¶ 25.) Bjorn convinced her to enter into what was purported to be a fixed, flat fee contract for the construction. (SDF, ¶ 26.) Miller soon realized there was nothing "fixed" about the contract, and that it had been a mere ruse to extract significantly more money from her. (SDF, ¶ 27.) In fact, after refusing multiple requests for an estimated breakdown of costs, Bjorn told Miller she may end up paying more than twice what the parties had agreed. (SDF, ¶ 28.) She was ultimately forced to seek redress in court, and filed a lawsuit against Bjorn in Montana's Fourth Judicial District on September 5, 2019. (SDF, ¶ 29.)

Bjorn responded by filing a counterclaim against Miller on September 18, 2019. (SDF, ¶ 31.) This counterclaim, later amended, gives rise to this coverage dispute. (SDF, ¶ 31.) In the counterclaim, Bjorn asserts four causes of action against Miller: (1) breach of contract, (2) constructive fraud, (3) fraud, and (4) abuse of process. (SDF, ¶ 32.)

2

In general terms, the abuse of process claim is based on allegations that Miller filed the lawsuit against Bjorn for an improper and ulterior purpose, including to harm Bjorn's business reputation.  (SDF, ¶ 33.)  The constructive fraud and actual fraud claims are based on allegations that Miller made "false or misleading representations" concerning the scope of the project that misled Bjorn to his prejudice.  (SDF, ¶ 34.)  Bjorn alleges, in part, that this tortious conduct caused the loss of use of certain tangible property, including "the steel building [Bjorn] purchased in anticipation of performing the scope of work" and "extensive drawings and plans created by its architects."  (SDF, ¶ 35.)

The Insurers undertook Miller's defense under a reservation of rights.  (SDF, ¶ 36.)  Rather than proceed with the counsel she had already retained to prosecute her affirmative claims, the Insurers appointed new and additional counsel to defend against the counterclaim.  (SDF, ¶ 36.)

The Insurers then filed this lawsuit, claiming there is no coverage for the claims asserted against Miller and that Miller must reimburse the Insurers for any amounts they have paid on her behalf.  (SDF, ¶ 13.)  Soon after Miller filed a motion to stay the proceedings, the Insurers filed their motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must identify facts which show a genuine issue for trial.  *Id*. at 324.  The court must view the evidence in the light most favorable to the nonmoving party.  *Bell v. Cameron Meadows Land Co*., 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Here, the undisputed material facts prove covered personal injury and property damage are alleged against Miller in Bjorn's counterclaim, triggering the Insurers' duty to defend.

## ANALYSIS

The Insurers argue they have no duty to defend Miller as a matter of law.  However, they misapprehend their duties under Montana law.  An insurer's duty to defend is "independent from and broader than its duty to indemnify."  *J & C Moodie Props., Ltd. Liab. Co. v. Deck*, 384 P.3d 466, ¶ 20 (Mont. 2016).  "The duty to defend arises when a complaint against an insured alleges facts, which if

proven, would result in coverage." *Farmers Union Mut. Ins. Co. v. Staples*, 90
P.3d 381, ¶ 21 (Mont. 20014).  Montana follows what other courts have termed the
"mixed-action" rule, which "requires an insurer to defend all counts in a complaint
so long as one count potentially triggers coverage, even if the remaining counts
would not be covered." *State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48, ¶ 16
(Mont. 2013).  When determining whether the duty to defend has been triggered,
all "factual disputes must be resolved in favor of coverage." *Staples*, ¶ 24.  "Unless
there exists an <u>unequivocal demonstration</u> that the claim against an insured does
not fall within the insurance policy's coverage, an insurer has a duty to defend."
*Staples*, ¶ 22 (emphasis added).

Thus, in order to prevail, the Insurers must unequivocally demonstrate that
<u>no claim</u> against Miller would result in coverage if the alleged facts are proven.
Evaluating this question, the Court must look to the facts alleged in the underlying
case, the policies issued by the Insurers, and the Insurers' knowledge of "facts
obtained from outside the complaint." *Revelation Indus., Inc. v. St. Paul Fire &
Marine Ins. Co.*, 206 P.3d 919, ¶ 39 (Mont. 2009).  Applying this analytical
framework, the Insurers have failed to meet their burden under Rule 56.

I.    **THE INSURERS HAVE NOT MADE AN UNEQUIVOCAL DEMONSTRATION THAT PERSONAL AND ADVERTISING INJURY IS NOT ALLEGED IN THE UNDERLYING ACTION.**

The Insurers acknowledge they agreed to provide coverage for "personal and advertising injury," which the policies define as injury arising out of any one of a number of enumerated "offenses."  These include "malicious prosecution," as well as the "oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services."  The counterclaim asserted against Miller satisfies this definition, and no exclusions apply.

A.    **The Abuse of Process Claim Alleges Personal and Advertising Injury.**

The Insurers argue the policies' definition of "personal and advertising injury" does not afford coverage for an abuse of process claim, but concede in their motion this is a matter of first impression in Montana, and the authority in other jurisdictions is mixed.  (Doc. 18 at 15-19.)  The Ninth Circuit, applying California law, has reached the exact opposite conclusion:  It has determined an abuse of process claim constitutes personal and advertising injury under a commercial general liability policy.  *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 654–56 (9th Cir. 1994).  The Montana Supreme Court would hold likewise.

In *Lunsford*, the insurer issued a general liability policy to the insureds that, as here, covered "malicious prosecution" as "personal and advertising injury."  *Id*.

at 654.  As here, the insureds were denied a defense to an "abuse of process" claim.

*Id.*  In reversing summary judgment in favor of the insurer, the Ninth Circuit held:

> "Malicious prosecution" as used in the policy is ambiguous because it
> is not defined in the policy and because a layperson's understanding
> would differ from the legal definition of the term. ….
>
> A layperson could believe reasonably that the words "malicious
> prosecution" only required a lawsuit or other legal proceeding to be
> brought maliciously or spitefully for an improper purpose. A
> layperson also could believe reasonably that a counterclaim for abuse
> of process satisfied that requirement. Thus, the distinction between
> malicious prosecution and abuse of process is "at best unclear."
> *Koehring Co. v. American Mutual Liability Insur. Co.*, 564 F. Supp.
> 303, 311 (E.D. Wis. 1983).
>
> . . .
>
> Although the elements of the two torts technically are different, the
> distinction is not as clear as *American* insists. Prosser and Keeton
> observe:
>
>> Abuse of process differs from malicious prosecution in that
>> the gist of the tort is not commencing an action or causing
>> process to issue without justification, but misusing, or
>> misapplying process justified in itself for an end other than
>> that which it was designed to accomplish.
>>
>> . . . The two torts have the common element of an improper
>> purpose in the use of legal process, and there are many cases
>> in which [the two torts] overlap and either will lie, such as . . .
>> any unjustified criminal prosecution or civil action in which
>> legal process is used for an end other than that of the
>> proceeding itself.
>
> W. Page Keeton et al., Prosser & Keeton on Torts § 121, at 897-98
> (5th ed. 1984) (emphasis added).
>
> ….

> People buy insurance to protect themselves from legal costs for defending claims of various kinds. <u>There is no reason, given the overlap between malicious prosecution and abuse of process (particularly in the eyes of those untrained in the law), why persons who purchase insurance covering the cost of defending against the one claim would not also expect the contract to cover the cost of defending against the other.</u> The term as used in the policy is ambiguous. Therefore, we resolve the issue in favor of coverage.

*Id*. at 654-56 (emphasis added).  *See also, e.g., Elecs. for Imaging Inc. v. Atl. Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 90882, at *16 (N.D. Cal. Dec. 15, 2006) (applying *Lunsford* and holding abuse of process constitutes personal and advertising injury under California law).

The Insurers may argue *Lunsford* has no application because it applied California law.  However, California law is virtually identical to Montana law in all respects material to the decision.  The legal elements of the torts at issue— malicious prosecution and abuse of process—are the same in California as in Montana.  *See Lunsford*, 18 F.3d at 655; *see Siepel v. Olympic Coast Invs.*, 188 P.3d 1027, ¶¶ 11, 20 (Mont. 2008).  California also applies the same rules of construction for undefined policy terms and ambiguities in an insurance contract. *See Lunsford*, 18 F.3d at 655; *see Stutzman v. Safeco Ins. Co. of Am.,* 945 P.2d 32, 36 (1997).  Further, California, like Montana, applies the reasonable expectations doctrine, *Lunsford*, 18 F.3d at 655, which provides "the objectively reasonable expectations of insurance purchasers about the terms of their policies should be honored even if a painstaking study of the policy would negate those

8

expectations*."* *Hanson v. Employers Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1075

(D. Mont. 2004). Under this doctrine, "[a]n insurance contract is to be interpreted

from the viewpoint of a consumer with average intelligence, with no training in

law or insurance." *Id*. The court in *Lunsford* relied on this doctrine in holding an

abuse of process claim was covered under the commercial liability policy.

Additionally, the Ninth Circuit, applying California law, is far from alone in

its view that abuse of process constitutes personal and advertising injury under the

"malicious prosecution" offense. *See also Martin's Herend Imports, Inc. v. Twin

City Fire Ins. Co*., 2000 U.S. Dist. LEXIS 8690 (S.D. Tex. March 31, 2000)

(holding although Texas had not adopted the reasonable expectations doctrine and

the torts at issue were distinct under Texas law, the undefined term "malicious

prosecution" was nonetheless ambiguous and an abuse of process claim thus

triggered coverage); *Toll Bros. Inc. v. General Acc. Ins. Co*. 1999 WL 74426 (Del.

Super. August 4, 1999) ("Had the insurer wished to exclude a tort so closely

related to malicious prosecution, it should have done so expressly"); *St. Paul Fire

and Marine Ins. Co. v. Tingley Systems, Inc.* 722 So.2d 849 (Fla. 2d Dist. App.

1998) (holding "malicious prosecution" was ambiguous and insurer had duty to

defend); *Koehring Co. v. American Mut. Liab. Ins. Co*, 564 F.Supp 303, 311 (E.D.

Wis. 1983) (holding the "theoretical legal distinction" between abuse of process

and malicious prosecution is "not so clear that insurance coverage of one should

exclude coverage of the other unless the exclusion is specifically stated in the policy"); *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 1999 U.S. Dist. LEXIS 23858, at *17-19 (M.D. La. Jan. 11, 1999) ("[T]he insurance policy is ambiguous, at best, in failing to clearly define malicious prosecution. An individual negotiating an insurance policy could reasonably believe that coverage for malicious prosecution would include coverage for a claim of abuse of process, because the two causes of action contain common elements.")

Citing Mont. Code Ann. § 28-3-501, the Insurers insist that where "contractual language indicates that the parties used a particular term in a technical sense, the technical meaning 'must be followed.'" (Doc. 18 at 22.) That statute actually says "[t]he words of a contract are to be understood in their <u>ordinary and popular sense</u> rather than according to their strict legal meaning <u>unless</u> used by the parties in a technical sense. . . ." Mont. Code Ann. § 28-3-501 (emphasis added). And that is the point. There is nothing to indicate Miller, as one of the parties to the contract, used or understood the term "malicious prosecution" to have a strict legal meaning. This is particularly true because, under Montana law, "[a]n insurance contract is to be interpreted from the viewpoint of a consumer with average intelligence, with no training in law or insurance." *Hanson*, 336 F. Supp. 2d at 1075. Indeed, there is nothing to indicate the Insurers understood the term "in a technical sense" either, as it is undefined in the policies.

The Insurers' argument that the term is "obvious legal jargon" is simply not supported. Most Montana consumers would believe the kind of allegations levied against Miller in the underlying case would fall under the description of "malicious prosecution." As the Ninth Circuit correctly held in *Lunsford*, "a layperson could believe reasonably that the words 'malicious prosecution' only required a lawsuit or other legal proceeding to be brought maliciously or spitefully for an improper purpose." *Id*. The words "malicious" and "prosecution" are clearly terms that can be understood in their "ordinary and popular sense," Mont. Code Ann. § 28-3-501, and even in a legal sense it is "an improper use of legal process" that is the basis for both torts. *Lunsford*, 18 F.3d at 655 (citing Prosser & Keeton on Torts § 121).

 If the Insurers wanted to limit the meaning of the listed "offenses" in their policies to specific crimes or causes of action as strictly defined by applicable law, they easily could have said so. They did not. Instead, they used a term with an ordinary and popular meaning and did not define it. Their argument that this "offense" is "denominated in exclusively legal terminology" is supported by nothing more than their own say-so.

Further, the cases cited by the Insurers to support the argument that "malicious prosecution" be given a technical legal meaning actually support Miller's view, and only confirm contractual terms should be ascribed their ordinary and popular meaning absent evidence the parties—both parties—intended

11

something different.  *A.M. Welles, Inc. v. Mont. Materials, Inc.*, 342 P.3d 987, ¶¶

14-15 (Mont. 2015) (rejecting argument that the term "on account of" in an

indemnity clause should be given a technical meaning that included a

foreseeability requirement); *Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*,

209 P.3d 216, ¶¶ 17-23 (Mont. 2009) (interpreting the term "bar or tavern"

according to "the common and ordinary understanding" of the term, rather than a

technical definition).

In summary, although the issue has yet to be addressed in Montana,

Montana insurance law strongly supports the conclusion that the Montana Supreme

Court would follow the Ninth Circuit's lead in *Lunsford*.[1]

Lastly, the Insurers' analysis of personal and advertising injury begins and

ends with the undefined term "malicious prosecution," but another "offense" listed

in the policies is implicated as well.  The policies define personal and advertising

injury, in part, as the "[o]ral or written publication, in any manner, of material that

. . . disparages a person's or organization's goods, products or services."  (Doc.

8-1,  p. 22.)  There can be no question Bjorn's allegations, if proven, could result in

---

[1] Furthermore, because the issue is one of first impression in Montana, if the Court declines to issue a stay and finds any merit to the Insurers' position, it may certify this issue to the Montana Supreme Court *sua sponte*.  *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071-72 (9th Cir. 2019); Mont. R. App. P. 15(3).  Certification would be appropriate here because the question of whether abuse of process is covered in Montana presents important public policy ramifications that have yet to be resolved in Montana, presents a new and substantial issue of broad application, and certification would be consistent with the spirit of comity and federalism.  *See Kremen v. Cohen*, 325 F.3d 1035, 1037-38 (9th Cir. 2003).

coverage for this kind of personal injury.  Bjorn specifically alleges that, by filing and maintaining this action against Bjorn, Miller has made false accusations about his business and services with the improper purpose of inflicting "harm to business reputation."  (Doc. 8-4, p. 9.)

It appears the definition of the subject "offense" has rarely been the focus of litigation.  In *Aetna Cas. & Sur. Co. v. First Sec. Bank*, 662 F. Supp. 1126, 1131 (D. Mont. 1987), Judge Murray determined there was no coverage for personal injury under a similarly-defined disparagement offense.  However, that case involved a wrongful termination suit against the insured.  *Id*.  The insured attempted to argue that, by telling the employee she was fired, it had made an allegedly disparaging statement that was potentially covered by the policy.  *Id*. at 1132.  The court disagreed because, first, there was no allegation the statement was false and, second, there was no allegation the statement was made to anyone other than the employee herself.  *Id*.  Here, by contrast, Bjorn explicitly alleges the allegations published against him are false, made to third parties in a public forum, and have consequently damaged his business reputation.

Coverage has been found under far less direct allegations.  In *Towne Realty v. Zurich Ins. Co.*, 534 N.W.2d 886, 888 (Ct. App. 1995), the underlying plaintiff, an entertainment company, alleged that its assets had been stripped by the insured, such that it could no longer engage in its chosen profession.  *Id*.  The court found

this was sufficient to trigger a duty to defend under the policy's disparagement of

services coverage:

> Thus, while the Balestrieris' complaint did not expressly state a claim
> for libel or slander, the implication of this allegation is that Towne
> published false or misleading statements about them that caused
> damage to their reputation. Further, because the complaint states that
> the Balestrieris could no longer engage in their chosen profession, it
> reasonably suggests that damage was done to their reputation.
> Moreover, we note that the policy's definition of "personal injury"
> includes the disparagement of one's services. The Balestrieris'
> allegation that they could no longer engage in their chosen profession,
> taken in conjunction with their allegation that they were maligned by
> Towne, suggests that Towne disparaged the Balestrieris' services.
> Accordingly, the Balestrieris' allegation was sufficiently broad to
> suggest a claim within the policy's definition of "personal injury."
> Because we are required to resolve all doubts concerning coverage in
> favor of the insured, we conclude that Zurich had an obligation to
> defend Towne, at least until the nature of the claim could be otherwise
> determined.

*Id*. at 891.

Whether "malicious prosecution" or the "oral or written publication, in any

manner, of material that . . . disparages a person's or organization's goods,

products, or services," the Insurers have not unequivocally demonstrated the facts

alleged against Miller could not give rise to coverage for personal injury and

advertising injury.  Under Montana law, they must defend.

**B.     The Breach of Contract Exclusion Has No Application Because an Alleged Abuse of Legal Process Does Not Arise From a Breach of Contract.**

The Insurers next make an unprecedented argument—that Bjorn's abuse of process claim arises out of <u>contract</u>, subjecting it to the policy exclusion for "personal and advertising injury arising out of a breach of contract."  (Doc. 18 at 26.)  They cite no legal authority applying the breach of contract exclusion to an abuse of process, malicious prosecution, or other similar claim.  In attempting to expand the scope of the exclusion in this manner, the Insurers forget "exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy."  *Swank Enters. v. All Purpose Servs., Ltd.*, 154 P.3d 52, ¶ 27 (Mont. 2007).

The Insurers cite just two cases in support of their theory, *Beaverhead Cnty. v. Mont. Ass'n of Cntys. Joint Powers Ins. Auth.*, 335 P.3d 721 (Mont. 2014) and *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796 (Mont. 2008), but neither involved an abuse of process claim, or anything similar to one.  In both cases, contractors sued local governments over breaches of <u>contractual</u> duties and statements made during contract negotiations.  *See id*.  Under those facts, it was determined that although the claims were styled as tort claims, they were based exclusively on duties owed under the parties' contract.  *Id*.

In *Geraldine*, for instance, the negligent misrepresentation claim arose from a breach of contract because the alleged negligent misrepresentation was the very same statement that created the insured's contract. *Geraldine*, ¶ 25. The constructive fraud claim was likewise excluded because any duty the insured owed "arose from the contract." *Geraldine*, ¶¶ 31-32.

Similarly, in *Beaverhead County*, the negligent misrepresentation claim alleged the County "knew or should have known that certain material representations contained in the Contract Documents were not true." *Id.*, ¶ 18. The Montana Supreme Court concluded that, "[a]s in *Geraldine*, the statement that allegedly constituted negligent misrepresentation was part of the contract." *Id.* (emphasis added). It disposed of the other negligence claims in a similar manner, as they were based on the county's "a duty of care . . . as a general contractor and prospective bidder," and on allegations the County breached that duty by "preparing and providing Contract Documents that contain[ed] material defects and were not otherwise prepared in compliance with applicable codes or industry standards." *Id.*, ¶ 19. The Court determined that, "any duty that the County owed to Coleman arose from their contractual relationship . . . [and] the defects constituting the alleged breach were part of the contract itself." *Id.* For these reasons, "as in *Geraldine*," the factual basis for the claims was the contract itself. *Id.*, ¶¶ 19, 20.

Needless to say, the factual basis for Bjorn's abuse of process claim is not the contract itself, nor is it based on statements made during contract negotiations, or statements which are part of the contract.  In fact, it is difficult to imagine how an abuse of process claim could ever be found to "arise[] out of breach of contract" because it is necessarily based on the <u>use of a legal process</u> against another to accomplish a purpose for which the process was not designed.  *Seipel*, ¶ 20.  The tort is not based in any respect on the parties' contractual relationship or the duties arising therefrom; it is based on the independent duty one owes to <u>every individual</u> not to use legal process against them with an ulterior purpose.  *Id.*  For this reason, it is no surprise the Insurers fail to cite a single case, from any jurisdiction, excluding coverage for abuse of process/malicious prosecution as "arising out of a breach of contract."  *Compare Peterborough Oil Co. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 243 (D. Mass. 2005) (holding that because malicious prosecution was based on distinct conduct in using legal process, former employee's claim was not subject to policy exclusion for "personal injury" "arising out of" any "employment-related acts or omissions").

Moreover, the conclusion that Miller's alleged abuse of process did not "aris[e] out of" a breach of contract is buttressed by the fact that the Montana Supreme Court has deemed the term "arising out of" ambiguous when employed in policy exclusions, meaning it must be construed in Miller's favor.  *E.g.*, *State*

*Farm Mut. Auto. Ins. Co. v. Ferrin*, 54 P.3d 21, ¶ 14 (Mont. 2002); *Pablo v. Moore*, 995 P.2d 460, ¶ 20 (Mont. 2000).  Under the Insurers' expansive interpretation, the improper use of legal process will always be excluded if the party committing the tort has any kind of contractual relationship with the insured, irrespective of the distinct duty upon which the tort is necessarily based.  This provides yet another basis to reject the Insurers' broad reading of the exclusion.

## II. THE INSURERS HAVE NOT MADE AN UNEQUIVOCAL DEMONSTRATION THAT PROPERTY DAMAGE IS NOT ALLEGED IN THE UNDERLYING ACTION.

### A. The Underlying Action Alleges Loss of Use of Tangible Property Not Physically Injured.

The Insurers argue the Counterclaim alleges "pure economic loss" and does not, therefore, satisfy the policy definition of "property damage."  However, the policies define "property damage" to include "loss of use of tangible property not physically injured."  The counterclaim alleges such loss of use.  Bjorn alleges Miller's tortious conduct caused the loss of use of "the steel building [Bjorn] purchased in anticipation of performing the scope of work" as well as "extensive drawings and plans created by its architects."  (Doc. 8-1, ¶ 15.)  In claiming these allegations do not mean what they say, the Insurers make factual assumptions nowhere to be found in the four corners of the counterclaim and rely on distinguishable case law.

18

The cases the Insurers cite did not involve the loss of use of tangible property. *Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214 (1990)—the case upon which the Insurers place primary reliance—was a <u>copyright infringement</u> case. The plaintiff alleged its publication was copied by the defendant, resulting in economic loss. *Id.*, 797 P.2d at 215-16. There were no allegations the plaintiff's publication, which the court agreed was "tangible property," could not be <u>used</u> for any period of time. *Id*. In fact, the publication was distributed, sold and used as it had always been. *Id*. The only allegations concerned purely economic loss as a result of the defendants' plagiarism. *Id*.

The Insurers next cite two cases from this district, *Chandler v. Sentry Select Ins. Co.*, 2011 U.S. Dist. LEXIS 128779 (D. Mont. Sep. 22, 2011) and *Aetna Casualty & Surety Company v. First Security Bank*, 662 F.Supp. 1126 (D. Mont. 1987), but these also did not involve loss of use of tangible property. In these cases, the insureds presented an argument that would effectively render <u>every</u> economic loss covered "property damage"—they argued lost wages were "property damage" because they involve money, and money is something that can be "handled, touched, of physically possessed." *Chandler*, *10-12; *Aetna*, 662 F.Supp, at 1129-30. Not surprisingly, the courts rejected this expansive construction of the term. *Id*. Miller is not suggesting a similar construction here.

Similarly, the Insurers cite *Phoenix Insurance Company v. Ed Boland Construction, Inc.*, 229 F.Supp.3d 1183 (D. Mont. 2017) as holding "increased construction costs did not constitute 'property damage' under a liability policy" (Doc. 18 at 17), but this is another argument Miller is not making in this case.  It is the loss of use of indisputably tangible property—the steel building and the plans—that invoke property damage coverage under the facts of this case.

Lastly, *Lindsay Drilling & Contracting v. United States Fid. & Guar. Co.*, 676 P.2d 203, 206 (1984), if anything, supports Miller's position.  In that case, the Montana Supreme Court found economic loss stemming from the alteration of core mineral samples was "property damage" because the samples "are tangible property because they are perceptible and material." *Id*.  Here too, although the tangible property at issue was not physically injured, that fact that its loss of use led to economic damages does not take it outside the scope of the policy definition of "property damage."

**B.      The Property Damage Was Caused by an Occurrence.**

The Insurers next argue no "occurrence" is alleged because Miller's claimed conduct was "objectively foreseeable to a reasonable insured."  (Doc. 18 at 19.) They argue "Bjorn's alleged injuries arise exclusively from Miller's and MVP's allegedly deliberate decision to understate the scope of the project for the purpose of 'leveraging' him into performing without compensation."  (Doc. 18 at 19.)  This

argument is based on an incorrect construction of the underlying counterclaim and Montana law on the duty to defend.

The Insurers argue the "occurrence" question can be resolved at this early stage because the standard to be applied under Montana law is an objective one that the Court can make based on the underlying pleading alone.  They cite two cases in this regard, *Employers Mut. Cas. Co. v. Fisher Builders,* 371 P.3d 375 (Mont. 2016) and *Landa v. Assurance Co.*, 307 P.3d 284 (Mont. 2013), neither of which were duty to defend cases.  Both cases involved declaratory judgment actions filed after settlement of the underlying case and thus addressed the insurer's duty to <u>indemnify</u>.

Miller does not disagree Montana's two-prong test to determine whether a covered "occurrence" has taken place invokes an objective standard.  In *Fisher Builders*, the Montana Supreme Court held this test asks "(1) whether the act itself was intentional, and (2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint."  *Id.,* ¶ 19.  It also made clear "the second prong of the analysis . . . is an objective inquiry."  *Id*.  However, the Insurers gloss over the fact that their authority involves very different duty to indemnify analyses, and they also construe allegations in the underlying counterclaim strictly in their own favor, contrary to Montana law.

After *Fisher Builders*, the Montana Supreme Court clarified that summary judgment was ripe in that case only because the duty to <u>indemnify</u> was at issue, not the duty to <u>defend</u>, which is of course a broader duty. *Huckins v. United Servs. Auto Ass'n*, 396 P.3d 121, ¶¶ 27-28 (Mont. 2017). In *Huckins*, the Montana Supreme Court reversed the trial court's grant of summary judgment to the insurer on whether an occurrence had taken place, "in *Fisher Builders*, we were faced with a duty to indemnify issue, not a duty to defend issue," and "nuanced arguments about intent make it impossible to conclude there was 'an unequivocal demonstration' that Huckins' claims fell outside the Renter's Policy." *Id*. Despite allegations the insureds knew about prior basement flooding problems and failed to disclose them to the seller, issues of fact precluded summary judgment on whether the harm stemming from the alleged nondisclosure was intended or expected from the seller's standpoint. *Id*.

Other cases issued since *Fisher Builders*, including from the Ninth Circuit, similarly hold that, despite the objective standard adopted by the Montana Supreme Court, summary adjudication of the "occurrence" question is usually premature in the duty to defend context. *Northland Cas. Co. v. Nw. Log Homes, LLC*, 713 F. App'x 713, 714-15 (9th Cir. 2018) (reversing summary judgment on "occurrence" question because material issues of disputed facts existed concerning what the defendant contractor knew and the harm he could have reasonably

expected); *W. Heritage Ins. Co. v. Slopeside Condo. Ass'n*, 371 F. Supp. 3d 828, 836 (D. Mont. 2019) (same).

Here too, deciding whether the alleged consequences to Bjorn, and in particular the loss of use of certain tangible property, would have been objectively foreseeable is not a determination that can or should be made now on the basis of the counterclaim as currently plead in the underlying case. This is particularly true because, in the duty to defend context, a court is required to "liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, ¶ 22. The notion that the underlying allegations alone can provide an "unequivocal demonstration" as to the harm expected or intended from Miller's standpoint (objectively or subjectively) is without merit. This so not only because of the broad nature of the duty to defend, but because the policy definition at issue is ambiguous under Montana law. *See Safeco Ins. Co. of America v. Tunkle*, 997 F.Supp. 1356, 1357-58 (D. Mont. 1998) (the term "accident," when used to define the term "occurrence," is ambiguous).

Moreover, even if questions of intent could be mechanically determined on the basis of the mere title of a cause of action, as the Insurers seem to suggest, Montana law is clear that constructive fraud does not require a showing of fraudulent intent. *See Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, ¶ 62 (Mont.

2014).  As one Montana district court explained, "[w]hile fraud arises from an intentional act, and therefore cannot be considered an 'occurrence,' constructive fraud is not necessarily based on intentional acts."  *State Farm v. Lien*, 1994 Mont. Dist. LEXIS 317, *7 (Mont. Dist. 1994).

## CONCLUSION

The Insurers have failed to meet their burden under Rule 56.  The counterclaim brought against Miller in the underlying action triggers coverage for both "personal and advertising injury" and "property damage."  The Insurers' motion for summary judgment should be denied.

DATED this 11th day of September, 2020.

BOONE KARLBERG P.C.

/s/ Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants MVP Holdings,*
*LLC and Linda Miller*

24

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing brief is double-spaced, 14-point Times New Roman font, and contains approximately 5,705 words, excluding caption, certificate of compliance, table of contents and table of authorities.

DATED this 11th day of September, 2020.

BOONE KARLBERG P.C.

/s/ Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants MVP Holdings,
LLC and Linda Miller*