IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY, | CV 20–59–M–DWM |
| Plaintiffs, | OPINION and ORDER |
| vs. | |
| MVP HOLDINGS, LLC, LINDA MILLER, and BJORN JOHNSON CONSTRUCTION, LLC, | |
| Defendants. | |

This coverage dispute arises out of a lawsuit concerning a fixed-bid construction contract for a steel building. Plaintiffs West American Insurance Company and Ohio Casualty Insurance Company (the "Carriers") seek summary judgment on the ground that the allegations against their insured, Defendants MVP Holdings, LLC and Linda Miller (collectively "MVP"), do not fall within the applicable policies, and thus do not trigger the duty to defend. (Doc. 18). Because they are correct, summary judgment is granted in favor of the plaintiffs.

1

**BACKGROUND**

## I.     The Underlying Case

On December 24, 2018, Defendant Bjorn Johnson Construction, LLC

("Bjorn") entered into a contract with MVP to construct a steel building addition

for a flat fee of $1,857,459.  (Doc. 8-3 at ¶¶ 7, 13.)  After the contract was signed,

there was a series of change order requests that would have increased the cost of

the building to $4 million.  (*Id.* at ¶¶ 21–25.)  MVP sued Bjorn on September 5,

2019, alleging Bjorn intentionally underbid the project and withheld information to

force MVP to pay more on the contract.  (*Id.*)  Bjorn counterclaimed, alleging that

MVP knew the building would cost more and reduced the scope of the project

during bidding so that it could be expanded later without having to pay more under

the contract.  (Doc. 8-4.)  The Carriers stepped in to defend MVP on the

counterclaims under a reservation of rights.  (Doc.16-3.)

## II.     The Present Case

West American issued a commercial liability policy with two insuring

agreements (Coverages A and B) effective November 13, 2018 to November 13,

2019 (the "Primary Policy").  (Doc. 18 at 11-12.)  Ohio Casualty issued a

commercial umbrella policy for the same period (the "Umbrella Policy").  (Doc. 18

at 13.)  Coverages A and B under the Primary Policy contain analogous provisions

to the Umbrella Policy.  On May 5, 2020, the Carriers filed this lawsuit, seeking a

2

declaration that there is no coverage, and therefore no duty to defend or indemnify, for the counterclaims under the Primary Policy (Count One), or the Umbrella Policy (Count Two). The Carriers also want to recoup defense costs for the underlying action (Count Three). (Doc. 1.)

### LEGAL STANDARD

Summary judgment may be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they have the potential to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine when a reasonable jury could return a verdict for the non-moving party. *Id.* All the evidence must be viewed and all justifiable inferences drawn in favor of the non-moving party. *Id.* at 255.

### ANALYSIS

**I.    Applicable Law**

The duty to defend is "independent from and broader than the duty to indemnify created by the same insurance contract." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). Thus, if there is no duty to defend, there is no duty to indemnify. *Id.*; *but see Troutt v. Colo. W. Ins. Co.*, 246 F.3d

1150 (9th Cir. 2001). The duty to defend "arises when a complaint against an insured alleges facts which, if proven, would result in coverage." *Staples*, 90 P.3d at 385. An insurer must make an unequivocal demonstration that the claim does not fall within the policy to show there is no duty to defend. *Id.* When a claim or complaint clearly falls outside the scope of coverage, an insurer has no duty to defend. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 478 (Mont. 2005). However, "a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations is resolved in favor of finding" coverage. *Staples*, 90 P.3d at 385.

## II.     The Policies

Because the allegations in the underlying counterclaim do not fall within the terms of Coverage A or B, there is no duty to defend under either policy.

### A.     Coverage A

Under Coverage A, the Carriers provide coverage for amounts the insured must pay as a result of "bodily injury" or "property damage" caused by an "occurrence." (Doc. 16-1 at 56.) The parties agree that Bjorn's underlying counterclaim does not allege "bodily injury." (*See* Doc. 18 at 16-17.) Therefore, for Coverage A to apply, the counterclaim must allege "property damage" caused by an "occurrence." "Property damage" is defined as: (a) "Physical injury to tangible property, including all resulting loss of use of that property . . . ; or (b)

4

Loss of use of tangible property that is not physically injured . . . " (Doc. 16-1 at

71–72.)  The Carriers argue Coverage A does not apply because the counterclaim

alleges only "pure economic loss."  In response, MVP argues that Bjorn's

counterclaim alleges loss of use of the steel building and architects' drawings and

plans as "loss of use of tangible property not physically injured."  The Carriers

have the better argument.

When allegations of property damage occur, Montana law requires the injury

or loss of use to occur to tangible property, or "property that is capable of being

handled, touched, or physically possessed." *Graber v. St. Farm Fire & Cas. Co.*,

797 P.2d 214, 216 (Mont. 1990).  Where economic loss is alleged, there must be

direct injury to tangible property for coverage to apply.  *Id.*  The court in *Graber*

found lost advertising business, substantial loss of revenues, and irreparable injury

to reputation and goodwill to be economic damages that were not, as a matter of

law, property damage.  *Id.* at 216-17.

Bjorn's counterclaim alleges similar economic damages such as lost profits

and business opportunities, harm to business reputation, and attorney fees, time,

and effort.  The portion of the counterclaim which MVP asserts alleges loss of use

reads, in relevant part: "[MVP]'s subsequent repudiation of the contract and the

filing of [the underlying state action] are both efforts to receive the benefits of

[Bjorn]'s substantial work . . . including, without limitation: (a) [Bjorn]'s extensive

drawings and plans created by its architects; . . . and (c) the steel building it purchased in anticipation of performing the scope of the work." (Doc. 8-4 at ¶ 15.) The benefits Bjorn alleges MVP sought are clarified as obtaining work without paying for it and forcing Bjorn to release its expectancy for dismissal of the civil action. (*Id.* at ¶¶ 16–17.)

Like *Graber*, these allegations concern economic loss: the damage caused by MVP obtaining work without paying for it would be loss of revenue to Bjorn, and the damage caused by Bjorn releasing its expectancy would be loss of the ability to pursue legal process to collect that revenue. Bjorn's damages claims are also monetary in nature. (*Id.* at ¶¶ 18–34.) There is no mention of tangible property at all, much less "loss of use of tangible property." In addition, the items that MVP uses to justify that the counterclaim alleges "loss of use of tangible property" are not items Bjorn expected to retain; these items were purchased in "anticipation of performing the scope of the work," which was constructing a building to be owned by MVP. (Doc. 8-4 at 4-5.)

As pled, the counterclaim contains no allegations that would be covered by the "property damage" provision. Thus, the Carriers have made an unequivocal showing that there is no coverage, and therefore no duty to defend, under this provision. *Staples*, 90 P.3d at 385. And, because there is no "property damage," it

is unnecessary to determine whether there was an "occurrence." There is no duty to defend and therefore no indemnity under Coverage A.

## B.    Coverage B

Under Coverage B, the Carriers provide coverage for amounts the insured must pay as a result of "personal or advertising injury." (Doc. 16-1 at 61.) Coverage is lacking under this provision both in light of its specific terms and because of a breach of contract exclusion.

### 1.    Specific Offense Requirement

"Personal and advertising injury" arises out of a list of enumerated offenses, which includes, *inter alia*: malicious prosecution or making a slanderous or libelous oral or written publication that concerns an organization's products, goods, or services. (*Id.* at 71.) For Coverage B to apply, Bjorn's underlying counterclaim must allege one of these offenses. It does not.

Under general principles of Montana law, contracts are interpreted to "give words their plain and ordinary meaning unless a technical meaning is apparent." *A.M. Welles, Inc. v. Mont. Materials, Inc.*, 342 P.3d 987, 990 (Mont. 2015). Montana courts "will not expand the terms of an insurance policy to provide coverage when the terms and phrases are unambiguous." *Am. Sts. Ins. Co. v. Flathead Janitorial & Rug Servs., Inc.*, 355 P.3d 735, 738 (Mont. 2015). Abuse of process is a technical term. Montana treats malicious prosecution and abuse of

7

process as common-law torts independent of each other with distinct elements.

*Plouffe v. Mont. Dep't of Public Health & Human Serv.*, 45 P.3d 10, 14 (Mont. 2002); *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014). Malicious prosecution has been referenced in Montana as a specific tort requiring an action filed without probable cause and with malice since some of the state's earliest cases. *See Martin v. Corscadden*, 86 P. 33 (Mont. 1906). Montana law has also recognized abuse of process as having distinct elements for 36 years, and when it did recognize those elements it did so based on the numerous other jurisdictions that had done so. *See Brault v. Smith*, 679 P.2d 236, 240 (Mont. 1984) (collecting cases). This is reasoned affirmation that abuse of process is unambiguously separate and apart from malicious prosecution and cannot be read to be included under malicious prosecution.

As for the publication claim, the counterclaim does not support an assertion of oral or written publication of material that disparages goods, products, or services. It is true that in the counterclaim, Bjorn alleges harm to business reputation as one of the damages he suffered in the abuse of process claim. (Doc. 8-4 at ¶ 34.) However, nowhere in the counterclaim does Bjorn allege that MVP made statements that disparage his goods, products, or services. The only mention of Bjorn's goods, products, or services is in the context of how MVP is alleged to

8

have tried to obtain Bjorn's services for less than their value.  This is not a disparagement of the services, but a breach of contract.

But, even if Bjorn's counterclaim does allege offenses covered by the "personal and advertising injury" provision, coverage is precluded by a policy exclusion.

### 2.    Breach of Contract Exclusion

Pursuant to the policies, coverage is excluded for "'personal and advertising injury' arising out of a breach of contract."  (Doc. 16-1 at 62.)  That is the case here.

As with MVP's allegations of "loss of use of tangible property not physically injured," the counterclaim's allegations simply do not match MVP's argument that the contract is not the factual basis for its abuse of process and disparaging publication claims.  The very reason stated in the counterclaim behind MVP filing the action is that MVP "is attempting to avoid the consequences of [its] breach."  (Doc. 8-4 at ¶ 33).  The reason alleged for process being abusive is that MVP is filing an action to avoid paying expectancy damages for breach.  As this is the allegation made by Bjorn in the counterclaim, MVP cannot claim that the contract, and the breach, are not the factual bases for the abuse of process and disparaging publication allegations.  Accordingly, even if the counterclaim alleges

the specific offenses that give rise to "personal and advertising injury," there is no duty to defend—and therefore no duty to indemnify—under Coverage B.

## C.    Recoupment

The Carriers also seek to recoup defense costs for the actual costs and fees expended in the defending the underlying action.  (Doc. 1.)  To be entitled to reimbursement, an insurer must (1) timely and explicitly reserve the right to seek reimbursement and (2) provide the insured with specific and adequate notice of the potential for reimbursement.  *Ribi*, 108 P.3d at 480.  In a letter dated January 8, 2020, the Carriers informed MVP of their reservation of the right to seek reimbursement. (Doc. 10-1 at 10.)  The letter was timely, explicitly reserved the right to seek reimbursement, and provided the insured with notice of the potential for reimbursement.  Therefore, the Carriers may recoup the underlying defense costs and fees.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Carriers' motion for summary judgment (Doc. 17) is GRANTED as to all three counts of the Complaint.

IT IS FURTHER ORDERED that the Carriers are awarded the costs and attorney fees actually incurred in defending the underlying action to-date.  But no

10

attorney fees or costs are awarded—nor were they sought—for prosecution of the present action.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment consistent with this Opinion and Order and close the case.

DATED this 19ᵗʰ day of November, 2020.

Donald W. Molloy, District Judge
United States District Court